NOTICE

Decision filed 12/21/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170392-U

NO. 5-17-0392

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 03-CF-100 |
| | ) | |
| EDWARD OATS SR., | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court properly dismissed the defendant's amended postconviction petition at the second stage of the postconviction proceeding where the defendant failed to show a substantial deprivation of his constitutional rights.

¶ 2   A jury found the defendant, Edward Oats Sr., guilty of three counts of predatory criminal sexual assault. The circuit court sentenced the defendant to a term of natural life imprisonment on each count. On direct appeal, we affirmed the defendant's convictions and sentences. *People v. Oats*, 2013 IL App (5th) 110556, ¶ 1. The defendant subsequently filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), collaterally attacking his convictions and sentences. The circuit court

1

dismissed the postconviction proceeding on the State's motion at the second stage of the proceeding. The defendant now appeals the dismissal. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    In 2003, the defendant was in a romantic relationship with Santamara Kidd. Santamara had three minor children who lived with her: Tashirah, Travis, and Tyeshia. In 2003, Tashirah was in the sixth grade, Travis was in the fifth grade, and Tyeshia was in the third grade.

¶ 5    On March 7, 2003, while Tyeshia was at school, she approached her substitute teacher, Camille Jones, and asked to speak with Jones in private. According to Jones, Tyeshia stated: "Miss Jones, my momma's boyfriend has been having sex with me, and he came last night. He's coming back tonight, and I'm sick of it." Jones sensed that Tyeshia was upset and nervous. Jones retrieved a pencil and paper, placed Tyeshia alone in a room, and told Tyeshia not to say anything else but to use the paper and pencil to "pour your heart out." Jones left Tyeshia alone to write what happened to avoid influencing what Tyeshia wanted to report. Tyeshia wrote on the piece of paper as follows: "Dear Ms. Jones Every time my mom be at work her boyfriend come over and he rapes me last night he came." In addition, in her written statement, Tyeshia reported other details of the defendant's sexual assaults.

¶ 6    Administrators at Tyeshia's school contacted the police and the Department of Children and Family Services (DCFS). A police officer picked up Tyeshia at the school and took her to the Amy Center, which is a child advocacy center where children that have

2

been abused can be comfortable while they are interviewed. Police officers also picked up Tashirah and Travis, who were attending different schools, and brought them to the Amy Center.

¶ 7    At the Amy Center the minors were placed in separate rooms where they could not communicate with each other, and the children were interviewed individually. A police detective, Ken McElroy, conducted the interviews of the children. In addition, a DCFS investigator, Vanessa Shaw, was present in the room during the interviews. In an adjacent room, another police detective, Ray Gilbert, observed the interviews through a closed-circuit television system designed for such interviews. Gilbert took notes to form police reports and operated video recording equipment to record the interviews. However, due to equipment error, the video recordings of the first interviews of the children had no audio.

¶ 8    According to McElroy, during his interview of Tyeshia, she reported that the defendant sexually penetrated her using Vaseline as a lubricant. She described the locations in her house where the assaults occurred, mainly in her mother's bedroom, and she drew a diagram of the bedroom where the assaults occurred. The diagram included details such as clothes piled by the door and the location of the Vaseline the defendant used. Tyeshia drew the Vaseline jar on the corner of a dresser, telling the investigators, "That's the jar of Vaseline that he uses when he does bad things to me."

¶ 9    Tyeshia told McElroy that the defendant would call her into the mother's bedroom and that sometimes she would go and sometimes she would not. If she did not go voluntarily, the defendant would drag her by her shirt, arm, or hair into the mother's bedroom and take off her clothes. Tyeshia reported that the defendant laid on top of her

3

and used Vaseline to put his private part in her private part, which she referred to as her "privacy." She also reported that the defendant would put his private part in her butt and forced his private part in her mouth. Tyeshia described an occasion when the defendant hit her in her face and head with his private part while he was bent over her. Tyeshia also reported that she had seen the defendant place his private part in Tashirah's private part and in Travis's butt on different occasions.

¶ 10    Shaw described Tyeshia's statement during the interview as follows:

"She started out saying that [the defendant] was nasty; that he had put his penis into her—what she called her privacy, which she was able to identify that by pointing to a [*sic*] anatomically correct drawing. She pointed to the drawing, the vaginal area, and identified her private area as her privacy."

¶ 11    During Tashirah's interview, Tashirah also told the investigators that the defendant had placed his private part in her butt and in her private part (identifying her vaginal area) and also reported that the defendant used Vaseline as a lubricant while committing the assaults. Tashirah also told McElroy that she had observed the defendant on top of Tyeshia in their mother's bedroom putting his private part in Tyeshia's private part, in her butt, and in her mouth. Tashirah reported that the defendant had sex with Tyeshia many times. Tashirah also reported seeing the defendant place his private part in Travis's butt. Shaw described Tashirah's statement as follows:

"She said that [the defendant] had sex with her, had put his penis into her private area on many different occasions. She said that he had used Vaseline on her but she had wiped it off. She said that [the defendant] also had her perform sex on him."

4

¶ 12    During Travis's interview, Travis reported that the defendant would bring him into his mother's bedroom and used Vaseline to stick his private part in his butt. Travis also reported that he saw the defendant pull Tyeshia and Tashirah into the mother's bedroom and put his private part into Tyeshia's and Tashirah's private areas.

¶ 13    The children reported that they had been penetrated by the defendant either vaginally, rectally, or orally, and that the defendant used Vaseline. The children identified where the defendant kept the Vaseline and reported that the assaults occurred largely in their mother's bedroom. All three children also reported that the defendant would take them to Walmart, McDonald's, or to get ice cream after his assaults.

¶ 14    After these interviews, Gilbert and McElroy searched the mother's home with her permission. According to Gilbert the bedroom where the children reported that the offenses took place was laid out exactly as described by Tyeshia, including the location of a jar of Vaseline on a dresser.

¶ 15    Because the audio was not working when the investigators recorded the first interviews of the children, the investigators recorded second interviews of the children four days later on March 11, 2003. According to McElroy, during the second interviews, the children reported the same details of the abuse that they had reported during the first interviews. According to the investigators that attended both interviews, there were no substantive changes in what the children reported during the two interviews. On the day of their second interviews, investigators took photographs of the children which were later admitted at the defendant's trial over the defendant's objection.

¶ 16   On March 14, 2003, an osteopathic physician, Dr. Deanna St. Germain, D.O., conducted an examination of the children. Dr. St. Germain opined that her examination findings were consistent with abuse as described by the children. In forming her opinion, she considered history, behavior, and physical findings. On cross-examination, Dr. St. Germain admitted that there was no conclusive physical evidence of abuse for any of the children. Dr. St. Germain conceded that her opinion that the examinations were consistent with abuse was based on the history given by each child. The doctor agreed that she diagnosed abuse because the children said they were abused. She also explained, however, that usually over 90% of victims of sexual abuse have no physical signs unless they are examined within the first 24 to 48 hours after the abuse. She also noted that the use of Vaseline could be a reason for no physical findings.

¶ 17   Police officers arrested the defendant for predatory criminal sexual assault. When arrested, the defendant denied sexually assaulting the children and told the officers that he was good to the children and that he had no idea why they would be saying the things they were saying. The State charged the defendant with six counts of predatory criminal sexual assault. Specifically, count I alleged that the defendant placed his penis in Tyeshia's mouth, count II alleged that the defendant placed his penis in Tyeshia's vagina, counts III and IV alleged that the defendant placed his penis in Travis's anus, count V alleged that the defendant placed his penis in Tashirah's vagina, and count VI alleged that the defendant placed his penis Tashirah's anus.

¶ 18   The defendant's jury trial began on December 1, 2009. The evidence presented at the trial included Tyeshia's and Tashirah's testimony about the defendant's assaults.

Tyeshia testified that the defendant came over to their house every day including when their mother, Santamara, was not there. She also testified that the defendant sometimes watched them after school. Tyeshia told the jury about the defendant rubbing his penis between her legs and using Vaseline on her vagina while trying to put his penis inside her but that it hurt. She told the jury that the defendant also put his penis in her mouth and rubbed his penis on her butt but never put it in. She testified, "I would tell him that it hurted, and then he would make me suck his penis. Then he would put Vaseline between my legs and he would put Vaseline on his penis."

¶ 19    Tyeshia also testified that she saw the defendant rubbing his penis between Tashirah's legs in their mother's bedroom but the defendant assaulted Tashirah on fewer occasions. Tyeshia testified that through an open door into their mother's bedroom, she saw defendant play with Tashirah's breasts. She testified: "[The defendant] would always like—they'd go in my mom's room. [The defendant] would lay her on the bed, and he would fondle with her, like put his penis between her legs and touch her."

¶ 20    Tashirah also described to the jury her experiences with the defendant's assaults. According to Tashirah, the assaults first started after the family moved into a house in Mt. Vernon. She explained, "[The defendant] would bring us in there [(the mother's bedroom)] —well, bring me in there and, of course, had the door closed or whatever. He had his little Vaseline, and he would take his penis, he would put it in my mouth." Tashirah testified that the defendant tried to insert his penis in her vagina but it "hurted" so he stopped. She told the jury that the defendant assaulted her twice a week but assaulted Tyeshia more often.

7

¶ 21 Travis told the jury that the defendant made him perform oral sex on the defendant. Travis also testified that "[the defendant] tried to put it in my butt, but it wouldn't fit." Travis testified that he saw defendant make Tyeshia have oral sex with defendant in their mother's bedroom and that the defendant had made Tashirah perform oral sex and placed his penis in her vagina while in their mother's bedroom. Afterwards, Travis explained, the defendant would take them to Walmart or out for ice cream.

¶ 22 The defendant testified in his own defense and denied assaulting the children. He denied having any babysitter responsibilities for the children, although he would watch them on occasions when no other option was available. The defendant testified that he picked up the children on only three occasions and that his relationship with Santamara ended in 2002. According to the defendant, the last time he was at the children's house was approximately two to three weeks before the alleged abuse was reported. He explained that he first found out about the allegations when he was arrested. He described and displayed birthmarks to the jury and testified that he took the children to Walmart one time and never took them anywhere else.

¶ 23 At the conclusion of the trial, the jury found the defendant guilty of three counts of predatory criminal sexual assault. Specifically, the jury found the defendant guilty of placing his penis into Tyeshia's mouth and vagina and into Tashirah's vagina. The jury found the defendant not guilty with respect to the remaining three counts of predatory criminal sexual assault. The circuit court sentenced the defendant to natural life in prison for each conviction. See 720 ILCS 5/12-14.1(b)(1.2) (West 2002).

8

¶ 24    The defendant filed a direct appeal from his convictions and sentences, arguing that the circuit court improperly admitted hearsay statements made by the children, that he received ineffective assistance of counsel, that the State presented insufficient evidence of his guilt, and that the natural life sentence violated the proportionality clause of the Illinois Constitution and constituted cruel and unusual punishment in violation of the eighth amendment of the United States Constitution. *People v. Oats*, 2013 IL App (5th) 110556, ¶¶ 1, 39. We affirmed the defendant's convictions and sentences. *Id.* ¶ 63.

¶ 25    On October 2, 2014, the defendant filed a *pro se* petition for postconviction relief. Twenty days later, the defendant's counsel entered his appearance to represent the defendant in the postconviction proceeding. On March 23, 2016, the circuit court granted the defendant's counsel leave to withdraw, and the defendant then filed a new *pro se* motion for postconviction relief the same day. The circuit court subsequently appointed new postconviction counsel (postconviction counsel) to represent the defendant in the postconviction proceeding, and postconviction counsel filed an amended postconviction petition (amended postconviction petition) on June 6, 2017.

¶ 26    In the amended postconviction petition, the defendant argued that he was denied his constitutional right to a fair trial due to (1) an excessive number of uniformed police present in the courtroom during the trial, (2) the jury being shown photographs of the children taken in 2003 when the children reported the defendant's assaults, (3) the admission of improper hearsay statements identifying the defendant as the perpetrator, (4) the circuit court's refusal to allow defense counsel to impeach a State's witness with a prior inconsistent statement made before the grand jury, (5) a violation of Illinois Supreme Court

9

Rule 431(b) (eff. May 1, 2007), which requires the circuit court to instruct the jury on the *Zehr* principles, and (6) the prosecutor misstating the evidence during closing arguments. The defendant also argued that his duplicative life sentences must be vacated, and that appellate counsel was ineffective for failing to raise "issues that were apparent of record."

¶ 27 The State filed a motion to dismiss the amended postconviction petition. After hearing arguments from counsel, the circuit court granted the State's motion and dismissed the defendant's amended postconviction petition. The defendant now appeals the dismissal. On appeal, the defendant raises claimed errors that were included in the amended postconviction petition as well as claimed errors that were included in the defendant's second *pro se* postconviction petition but were not included in the amended postconviction petition. We will address each of the defendant's claimed errors raised on appeal in turn.

¶ 28                                    II. ANALYSIS

¶ 29 The claimed errors are presented to us in an appeal from the circuit court's second stage dismissal of the amended postconviction petition. The purpose of the Act is to provide an opportunity for a defendant to assert that his conviction was the result of a substantial deprivation of his constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). A proceeding under the Act is a collateral attack on the prior conviction and sentence. *People v. Brisbon*, 164 Ill. 2d 236, 242 (1995). It is "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Therefore, *res judicata* bars

consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 30 The adjudication of a petition filed under the Act follows a three-stage process. At the first stage, the trial court must review the postconviction petition within 90 days of its filing and determine whether it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). If the petition presents the gist of a constitutional claim the petition passes to the second stage. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶¶ 28-29. At the second stage, the trial court may appoint counsel to represent an indigent defendant. *Id.* ¶ 29. Appointed postconviction counsel has the duty to "shape[ ] the petitioner's claims into proper legal form and present[ ] those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). "An adequate or proper presentation of a [postconviction] petitioner's substantive claims necessarily includes attempting to overcome procedural bars, including timeliness, that will result in dismissal of a petition if not rebutted." *Id.* at 44. A postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims." *People v. Davis*, 156 Ill. 2d 149, 163 (1993). "[P]ostconviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* postconviction petition." *People v. Helton*, 321 Ill. App. 3d 420, 424-25 (2001).

¶ 31 After postconviction counsel makes all necessary amendments to the postconviction petition, the State may move to dismiss the defendant's petition. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). At a second stage hearing, in determining whether the defendant

11

has made a substantial showing of a constitutional violation, all well-pleaded facts in the petition, not positively rebutted by the record, are to be taken as true. *Id.* at 473.

¶ 32 A postconviction petition that is not dismissed at the first or second stage advances to the third stage, at which an evidentiary hearing is held. *People v. Ramirez*, 402 Ill. App. 3d 638, 641 (2010). A postconviction petitioner is not entitled to an evidentiary hearing as of right. Rather, the Act permits summary dismissal when the allegations in the petition, along with the trial record or accompanying affidavits, fail to show a substantial violation of constitutional rights. *People v. Richardson*, 189 Ill. 2d 401, 408 (2000).

¶ 33 In the present case, the defendant's postconviction petition proceeded to the second stage of the postconviction process. The defendant's court appointed postconviction counsel filed an amended postconviction petition, and the circuit court dismissed the amended postconviction petition on the State's motion. In challenging the circuit court's second stage dismissal, the first issue the defendant raises on appeal concerns the effectiveness of his court appointed postconviction counsel.

¶ 34 A. Effectiveness of Postconviction Counsel

¶ 35 In postconviction proceedings, defendants have no constitutional right to effective assistance of counsel. *People v. Custer*, 2019 IL 123339, ¶ 32. Instead, under the Act, defendants are entitled only to a "reasonable" level of assistance of counsel in postconviction proceedings. *Perkins*, 229 Ill. 2d at 42. This statutorily defined standard is lower than the standard of assistance of counsel required under the federal and state constitutions. *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26.

12

¶ 36 "Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings, Illinois Supreme Court Rule 651 *** sharply limits the requisite duties of postconviction counsel." *Custer*, 2019 IL 123339, ¶ 32. Specifically, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes three duties on appointed postconviction counsel. *Perkins*, 229 Ill. 2d at 42. Either the record or a certificate filed by the attorney must show that postconviction counsel (1) consulted with the defendant to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petitions necessary to adequately present the defendant's contentions. *Id*. If a claim is frivolous or spurious, ethical obligations prevent postconviction counsel from advancing such claims. *Perry*, 2017 IL App (1st) 150587, ¶ 26. The purpose of Rule 651(c) is to ensure that postconviction counsel shapes the defendant's claims into the proper legal form and presents them to the trial court. *Perkins*, 229 Ill. 2d at 44. Substantial compliance with the rule is sufficient. *People v. Miller*, 2017 IL App (3d) 140977, ¶ 47.

¶ 37 In the present case, the defendant's postconviction counsel filed a Rule 651(c) certificate. The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007). To overcome this presumption, the defendant must demonstrate his counsel's failure to substantially comply with the duties imposed by Rule 651(c). *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 26. Whether postconviction counsel complied with Rule 651(c) and provided reasonable assistance is reviewed *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 38 With respect to this claimed error, the defendant recites a number of complaints in his brief about his postconviction counsel. We agree with the State that the defendant's complaints about his postconviction counsel primarily concern communications between the defendant and postconviction counsel that are not part of the record as well as other complaints about postconviction counsel that are not part of the record. Accordingly, the facts in the record do not support the defendant's argument and do not rebut the presumption that arises from postconviction counsel filing the Rule 651(c) certificate. In addition, the record establishes that postconviction counsel did consult with the defendant. The consultation duty under Rule 651(c) can be satisfied in only one conversation between attorney and the defendant. *People v. Turner*, 187 Ill. 2d 406, 410-11 (1999). In *Turner*, the supreme court rejected the defendant's argument that his postconviction counsel provided inadequate representation because they met only once in a two-year period. *Id*. The *Turner* court held that "there is no reason as a matter of law why this [consultation requirement] cannot be accomplished in one meeting with defendant." *Id*. at 411.

¶ 39 Postconviction counsel was not obligated to engage in communication about potential new claims for the defendant's petition; postconviction counsel was only required to investigate and properly present the defendant's raised claims. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 49. The record shows that postconviction counsel communicated with the defendant about his contentions of constitutional deprivations. While the defendant claims on appeal that the communication was not what the defendant wanted, nothing in the record establishes that the communication was insufficient to satisfy the requirements of Rule 651(c).

14

¶ 40   The defendant also argues that postconviction counsel failed to contact witnesses that could have been called to testify at the trial but were not. A postconviction claim that trial counsel was ineffective for failing to call certain witnesses must be supported by affidavits of the witnesses and an explanation of the significance of the testimony. *People v. Johnson*, 154 Ill. 2d 227, 240-41 (1993).

¶ 41   Here, postconviction counsel did not include any claims about uncalled witnesses in the amended postconviction petition or attach any affidavits or other documents supporting the defendant's contentions about missing witnesses. However, "[a]bsent a showing of available material for supporting affidavits, a failure to present affidavits obviously cannot be considered a neglect by the attorney." *People v. Stovall*, 47 Ill. 2d 42, 46 (1970). "[A] reviewing court cannot presume the existence of error which is not affirmatively shown of record." *People v. Boshears*, 228 Ill. App. 3d 677, 681 (1992). The defendant has failed to establish the existence of any evidence supporting the postconviction petition's allegations that could have been, but was not, procured by postconviction counsel.

¶ 42                              B. *Voir Dire* Process

¶ 43   The defendant argues on appeal that his trial counsel and appellate counsel were constitutionally ineffective for failing to challenge the "*voir dire* process," including the State's exclusion of African Americans and 10 men from the pool of potential jurors. In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the Court held that the equal protection clause of the United States Constitution forbids the prosecutor from dismissing potential jurors

solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

¶ 44    The defendant raised an issue with respect to the *voir dire* process in his second *pro se* postconviction petition that he filed on October 2, 2014, but postconviction counsel did not include any *voir dire* issues in the amended postconviction petition filed by postconviction counsel on June 6, 2017. Even though an issue may have been raised in an earlier version of a postconviction petition, the issue is not preserved for purposes of review if the defendant's final amended petition neither includes the claim nor generally incorporates the defendant's prior postconviction pleadings. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 55.

¶ 45    An amended postconviction petition supersedes the defendant's original petition such that any claims not included in the amended petition are not properly before the circuit court. See *People v. Pinkonsly*, 207 Ill. 2d 555, 566-67 (2003) (citing *People v. Phelps*, 51 Ill. 2d 35, 38 (1972), and *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384 (1996) ("Where an amended pleading is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes and is effectively abandoned and withdrawn.")). As a result, because the *voir dire* issues the defendant argues on appeal were not included in the amended postconviction petition that the circuit court dismissed, those issues cannot be raised on appeal. See *People v. Jones*, 211 Ill. 2d 140, 148 (2004).

¶ 46    The defendant argues that postconviction counsel was ineffective for failing to include claims related to the *voir dire* process in the amended postconviction petition.

16

However, there is no requirement that postconviction counsel must amend the petition to include a certain claim. *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991). In order to show inadequate representation in a postconviction proceeding, the defendant must show that the petition could have been amended to state a case upon which relief could be granted. *People v. Wren*, 223 Ill. App. 3d 722, 731 (1992). In addition, in the present case, since these claimed errors were not raised at the trial or on direct appeal, the defendant must show that both his trial counsel and appellate counsel were ineffective in failing to raise the claimed errors at trial or on direct appeal.

¶ 47   "It is axiomatic that the right to effective representation includes the right to effective assistance in preserving and establishing a claim of racial discrimination in the selection of one's jury pursuant to *Batson*." *People v. Little*, 2021 IL App (1st) 191108, ¶ 20. In *Batson*, the United States Supreme Court held that the equal protection clause of the fourteenth amendment prohibits a prosecutor from using a peremptory challenge to exclude a prospective juror solely on the basis of his or her race. *Batson*, 476 U.S. at 89. The State has violated the equal protection clause when the facts show that the State excluded an African American venireperson on the assumption that he or she will be biased in favor of the defendant simply because of their shared race. *Id*. at 97.

¶ 48   The *Batson* Court established a three-step process for evaluating claims of discrimination in jury selection. First, "the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race." *People v. Williams*, 209 Ill. 2d 227, 244 (2004). Second, once the circuit court determines that the defendant has established a *prima facie* case, the burden shifts to the State to provide a

17

race-neutral explanation for excluding the potential jury members. *Id*. The defendant may then rebut the proffered reason as pretextual. *Id*. Third, the circuit court must then determine whether the defendant has met his burden of showing purposeful discrimination in light of the parties' submissions. *Id*.

¶ 49 In the present case, the defense did not raise a *Batson* challenge in the proceedings below. Therefore, we must examine the record to determine whether the defendant can arguably make a *prima facie* showing of discriminatory purpose in the State's use of its peremptory challenges which would have arguably triggered defense counsel's duty to object to the exclusion of the venirepersons from the jury.

¶ 50 Under *Batson*, in order to establish a *prima facie* showing of discrimination, a defendant must present relevant factors or circumstances that raise an inference that the prosecutor challenged the venirepersons on account of their race. See *People v. Williams*, 173 Ill. 2d 48, 71 (1996); *People v. Davis*, 231 Ill. 2d 349, 360 (2008). The relevant factors include (1) the racial identity between the petitioner and the excluded venirepersons; (2) a pattern of strikes against African American venirepersons; (3) a disproportionate use of peremptory challenges against African American venirepersons; (4) the level of African American representation in the venire as compared to the jury; (5) the State's questions and statements during *voir dire* and while exercising peremptory challenges; (6) whether the excluded African American venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses. *Williams*, 173 Ill. 2d at 71. These examples are " 'merely illustrative' " and are not all inclusive. *People v. Davis*, 345 Ill. App. 3d 901, 907 (2004) (quoting *Batson*, 476 U.S. at

18

97). The trial court "must consider 'the totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike." *Davis*, 231 Ill. 2d at 360 (quoting *Batson*, 476 U.S. at 94).

¶ 51 After reviewing the record, we cannot say that the defendant would have been entitled to relief had postconviction counsel included the *Batson* issue in the amended postconviction petition. This is true because the record does not arguably support a *prima facie* showing of discriminatory purpose in the State's use of its peremptory challenges which would have arguably triggered defense counsel's duty to object to the exclusion of the venirepersons from the jury.

¶ 52 Our supreme court has repeatedly cautioned that "the mere fact of a peremptory challenge of a black venireperson who is the same race as defendant or the mere number of black venirepersons peremptorily challenged, without more, will not establish a *prima facie* case of discrimination." *Id.* at 360-61. In the present case, the record does not establish the ethnicity of any of the venirepersons. Accordingly, the defendant has not established that he and any of the excluded venirepersons were from the same cognizable racial group. In addition, the defendant failed to raise any " 'other relevant circumstances' " from which a trial court could find a *prima facie* showing of discrimination. *Johnson v. California*, 545 U.S. 162, 169 (2005) (quoting *Batson*, 476 U.S. at 96).

¶ 53 Also, the record does not demonstrate the level of African American representation on the venire as compared to the jury. The Illinois Supreme Court has held the "unchallenged presence of jurors of that race on the seated jury is a factor properly considered [citations] and tends to weaken the basis for a *prima facie* case of

discrimination." *People v. Rivera*, 221 Ill. 2d 481, 513 (2006). The defendant has the responsibility for "preserving the record, and any ambiguities in the record will be construed against [defendant]." *Davis*, 231 Ill. 2d at 365. We will not speculate as to the race of witnesses, the venire panel, or members of the jury. The defendant's failure to preserve a complete record prevents an analysis of all relevant first stage *Batson* factors.

¶ 54 "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). In addition, as stated above, postconviction counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 16. Based on the record before us, the defendant's *Batson* argument does not rebut this presumption or otherwise provide us with a basis for reversing the circuit court's second stage dismissal of the amended postconviction petition.

¶ 55 The defendant also argues that the jury pool from which his jury was chosen was not made up of a fair cross-section of the community. The only case cited by the defendant in support of his argument is *Batson*. In his second *pro se* postconviction petition, the defendant never argued or even set forth the requirements to establish a *prima facie* violation of the jury pool fair cross-section requirement. Therefore, the defendant's *pro se* petition did not clearly set forth the argument he now attempts to present on appeal, it was not considered by the circuit court, and we therefore need not address it. *People v. Cathey*, 2012 IL 111746, ¶ 21.

¶ 56　In his brief, the defendant included a "Section B" attached to this argument in which he complains about his trial attorney's cross-examination of the substitute teacher who was Tyeshia's first contact in reporting the defendant's assaults. The defendant did not raise this issue in his amended postconviction petition. In addition to this issue not being raised in the amended postconviction petition, in his brief, the defendant fails to cite any authority or citations in the record to establish a basis for reversing the circuit court's judgment on this argument.

¶ 57　Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires the argument section of the defendant's brief to contain arguments supported by citation to authorities. Although the defendant is pursuing this appeal *pro se*, the defendant's *pro se* status does not alleviate his duty to comply with our supreme court's rules governing appellate procedure. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 7. Here, the defendant has forfeited this argument for failure to comply with Rule 341(h)(7). See *People v. Phillips*, 215 Ill. 2d 554, 565 (2005) (finding an argument forfeited due to appellant's failure to support his assertion with argument or cite relevant authority); *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 15 (noting the appellate court is "not simply a repository in which appellants may dump the burden of argument and research" (internal quotation marks omitted)).

¶ 58　　　　　　　　C. Failure to Subpoena Witnesses and Documents

¶ 59　Next, the defendant argues that his trial counsel was ineffective for not confronting the substitute teacher about her "perjured" testimony and in failing to call a number of witnesses and subpoenaing certain records that he claims would have supported his

21

defense. Again, the defendant included these claimed errors in his *pro se* postconviction petition, but the claimed errors were not included in the amended postconviction petition. As we explained above, although an issue may have been raised in the initial postconviction petition, the issue is not preserved for purposes of review if the defendant's final amended petition considered by the circuit court neither includes the claim nor generally incorporates the defendant's prior postconviction pleadings. *Snow*, 2012 IL App (4th) 110415, ¶ 55. As a result, these claimed errors cannot be raised on appeal. See *Jones*, 211 Ill. 2d at 148.

¶ 60    The defendant argues that appointed postconviction counsel was ineffective for failing to include these and other issues raised in his second *pro se* postconviction petition. As we explained above, in such circumstances, in order to show unreasonable assistance of postconviction counsel, a defendant must show that the petition could have been amended to state a case upon which relief could be granted. *Wren*, 223 Ill. App. 3d at 731. With respect to these claimed errors, the defendant has failed to make the necessary showing.

¶ 61    These claimed errors raise claims of ineffective assistance of trial counsel. Claims of ineffective assistance of counsel are reviewed under the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Curry*, 178 Ill. 2d 509, 518 (1997). To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show both (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88.

¶ 62 The record on appeal does not establish that the substitute teacher offered perjured testimony and does not establish the substance of the testimony of any witnesses or documents that trial counsel did not subpoena. The defendant fails to demonstrate how the missing witnesses and documents would have resulted in his acquittal, nor does the defendant's unsubstantiated argument in his brief describe any specific information that any of the described witnesses had that would have resulted in his acquittal had the evidence been presented to the jury. The defendant's argument with respect to these claimed errors does not establish that postconviction counsel rendered unreasonable assistance of counsel or otherwise establish a basis for reversing the circuit court's second stage dismissal of the amended postconviction petition.

¶ 63                 D. Not Allowing Impeachment of a State's Witness
                        With Inconsistent Grand Jury Testimony

¶ 64 Next, the defendant's amended postconviction petition included an argument that the circuit court erred in denying the defendant an opportunity to cross-examine Detective Ken McElroy with prior inconsistent statements that McElroy gave during his grand jury testimony. The defendant did not challenge this evidentiary ruling in his posttrial motion, and the defendant did not raise the issue on direct appeal. In his amended postconviction petition, the defendant argued that his trial counsel and appellate counsel were ineffective in failing to properly raise the issue in the posttrial motion and on direct appeal.

¶ 65 As we have explained, claims of ineffective assistance of trial counsel and appellate counsel are reviewed under the two-part test established in *Strickland*, 466 U.S. 668. *Curry*, 178 Ill. 2d at 518; *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). In reviewing the circuit

23

court's dismissal of this claimed error, the issue we must address is whether the claimed error, viewed in conjunction with the trial record, made a substantial showing that the defendant was denied effective assistance of trial and appellate counsel. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show both prongs, *i.e.*, (1) that counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88.

¶ 66 Officer McElroy conducted the forensic interviews of the children and led the investigation into their allegations of sexual assault. Before the grand jury, McElroy testified that when he learned of Tyeshia's allegations, he gathered all three children and brought them to Amy Center for their safety. He told the grand jury that he spoke with Santamara, told her what Tyeshia had reported, and got her permission to interview the children. McElroy told the grand jury that the mother explained that she worked several nights a week and that the defendant often babysat the children while she worked.

¶ 67 At the trial, McElroy told the jury about taking the children to the Amy Center and contacting Santamara for her to come to the Amy Center and to get her permission to interview of the children. During cross-examination, the defendant's attorney asked McElroy whether he interviewed or talked to Santamara "about what her babysitting arrangements were." McElroy responded, "No. The children had told us." The defense attorney asked, "So you didn't think that it was necessary to talk to mom about that?" McElroy responded, "Babysitting wasn't the issue here." When the defense attorney started

24

to ask McElroy about his grand jury testimony, the prosecution objected, and the circuit court sustained the objection.

¶ 68 The State never articulated the basis for its objection, and the defendant did not include this issue in his posttrial motion. The defendant raised this issue in his amended postconviction petition and argued that appellate counsel was ineffective in failing to raise the issue on direct appeal. In moving to dismiss this claimed error, the State argued that the defendant "overstated" the value of McElroy's testimony as the case hinged on the credibility of the children's testimony about the assaults. The State also noted that had McElroy been impeached with his prior grand jury testimony, the cross-examination would have presented the jury with additional evidence of his babysitting the children thereby reinforcing the State's evidence that the defendant had ample opportunity to assault the children as they reported despite his denials. The circuit court agreed with the State, finding as follows: "This Court fails to see what prejudice the Defendant would have suffered by the trial jury receiving even more evidence that the Defendant regularly cared for the children, thereby showing his opportunity to commit these offenses."

¶ 69 We agree with the circuit court's evaluation of this claimed error. The impeachment value of this grand jury testimony would have been minimal at best. In addition, if the circuit court had allowed the defendant's trial counsel to impeach McElroy with his grand jury testimony, the jury would have heard additional evidence that, according to Santamara, the defendant often babysat the children while she was at work. We are confident that impeaching McElroy with this grand jury testimony would not have resulted in an acquittal. Therefore, under the record before us, the defendant has failed to establish the denial of his

25

constitutional right to effective assistance of trial and appellate counsel based on this claimed error. We cannot conclude that appellate counsel was ineffective in failing to raise this issue on direct appeal. We agree with the circuit court and the State that whatever minimal value the impeachment might have accrued in the defendant's favor would have been outweighed by evidence reinforcing the State's contention that the defendant and the children were alone for significant periods of time contrary to the defendant's testimony. Accordingly, we have no basis for reversing the circuit court's second stage dismissal of the amended postconviction petition based on this argument.

¶ 70    On appeal, the defendant also complains that his trial counsel did not cross-examine McElroy about other matters but does not cite any pages in the record in support of his contentions, likely because many of the factual assertions are not contained within the record. As we explained above, Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires the argument section of the defendant's brief to contain citations to the record and arguments supported by citation to authorities. The defendant has forfeited these claimed errors by failing to include record citations in support of his factual assertions. *In re Marriage of Sinha*, 2021 IL App (2d) 191129, ¶ 50 ("Failure to cite authority or to the record are independent grounds to forfeit an argument.").

¶ 71             E. Uniformed Police Officer Presence at the Jury Trial

¶ 72    Next, in his amended postconviction petition, the defendant included a claim that he was denied a fair trial due to "an excessive number of uniformed police in the courtroom during the trial." In addressing this claim at the second stage of the postconviction proceeding, the circuit court found that this claim was "without merit and lack[ed] any

26

showing whatsoever [of] prejudice against the Defendant." We agree with the circuit court's ruling.

¶ 73    The presence of uniformed police officers in a courtroom during a criminal jury trial is not "inherently prejudicial." *People v. Peeples*, 205 Ill. 2d 480, 529 (2002). In addition, decisions regarding the propriety of uniformed officers in the courtroom are generally left to the discretion of the circuit court. *Id.* at 531. The *Peeples* court noted that jurors could reasonably draw a wide range of inferences from the presence of uniformed officers in the courtroom and their presence does not necessarily suggest that the defendant is particularly dangerous or culpable. *Id*. In addition, the *Peeples* court also recognized that was entirely possible that the jury would not infer anything prejudicial from uniformed officers' presence because armed guards are often present in public places. *Id.* at 530. Therefore, the circumstances of each case are essential in determining whether a defendant was prejudiced by the presence of police officers in the courtroom and whether the circuit court abused its discretion in allowing police officers in the courtroom. In the present case, the record falls short of establishing any prejudice or an abuse of discretion.

¶ 74    At the second stage of the postconviction proceeding, the defendant has the burden of showing a violation of a constitutional right. *Pendleton*, 223 Ill. 2d at 473. Dismissal at the second stage is warranted where the petition's allegations of fact, liberally construed in favor of the petitioner, and in light of the original trial record, fail to make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 382. In the present case, nothing in the record establishes any specific details about the presence of police officers. The record does not establish when, where, or how officers were present during the four-

day trial. We cannot determine whether the 20 officers referenced in the defendant's affidavit were present in the courtroom at the same time, whether they carried and displayed any weaponry, where the officers were situated in the courtroom, whether they were sitting or standing, whether they were visible to the jury, how long the officers were present in the courtroom, or whether there were any other circumstances surrounding their presence that could have led a juror to any prejudicial conclusions about the defendant as a result of their presence. The defendant also references the arrest of his son on a warrant during the trial, but there is nothing in the record or in the defendant's amended postconviction petition that would establish that the jury could make any connection between the person arrested and the defendant.

¶ 75 Furthermore, the defendant has again failed to adequately support his argument about this claimed error with any citations to the record in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). As we explained above, the defendant's *pro se* status does not excuse his failure to comply with the supreme court's requirements for appellate procedure. *Wing*, 2016 IL App (1st) 153517, ¶ 7. The defendant has forfeited this argument by failing to cite any portion of the record in support of his contention. Failure to provide proper record citation "is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12. Therefore, the defendant has presented us with no basis to reverse the circuit court's second stage dismissal of this claimed error.

28

¶ 76                    F. The Introduction of Photographs of the Children

¶ 77    The next argument that the defendant presents on appeal is that he was denied his constitutional right to a fair trial as a result of the prosecution introducing pictures of the children taken at the time of their forensic interviews. The circuit court allowed the admission of these photographs over the defendant's objection. The defendant could have raised this argument on direct appeal but did not do so. In his amended postconviction petition, the defendant maintained that appellate counsel was ineffective for failing to raise the issue on appeal. A defendant who contends that appellate counsel rendered ineffective assistance for failing to argue an issue must show that the failure to raise that issue was objectively unreasonable and that, but for this failure, defendant's conviction or sentence would have been reversed. *People v. Griffin*, 178 Ill. 2d 65, 74 (1997); *People v. Caballero*, 126 Ill. 2d 248, 269-70 (1989).

¶ 78    In dismissing this claimed error at the second stage of the postconviction proceeding, the circuit court found that the "photographs were not gruesome and were relevant because the children's ages were elements of the offense, and a significant period of time had elapsed between the offenses and the jury trial." We again agree with the circuit court's finding.

¶ 79    In order to prove the defendant guilty of predatory criminal sexual assault, the State had to prove, among other things, that the children were under 13 years old at the time of the offense. See 720 ILCS 5/12-14.1(a)(1) (West 2002) (now codified at 720 ILCS 5/11-1.40(a)(1) (West 2020)). In 2003, when Tyeshia reported the defendant's abuse, Tyeshia

29

was 9 years old and Tashirah was 12 years old. The defendant's trial began over seven years later in December 2009 when the children were well past their thirteenth birthdays.

¶ 80    The admission of photographs is a matter that lies within the discretion of the circuit court. *People v. Taylor*, 2011 IL 110067, ¶ 27. An abuse of discretion occurs only when the circuit court's ruling is fanciful, unreasonable, or when no reasonable person would adopt the circuit court's view. *People v. Baez*, 241 Ill. 2d 44, 106 (2011). Photographs that are relevant to establish any fact in issue are admissible, and the admission of photographs does not necessarily become cumulative merely because there is also testimony on the same subject. *People v. Henenberg*, 55 Ill. 2d 5, 13-14 (1973).

¶ 81    In the present case, given that the photographs were probative on an element of the offense and were not otherwise inflammatory, we cannot say that the circuit court abused its discretion in allowing their admission. In addition, even if the admission of the photographs had been error, the defendant has failed to establish any prejudice from their admission. As a result, appellate counsel was not ineffective in failing to raise this issue on direct appeal.  Appellate counsel is not obligated to brief every conceivable issue on appeal. Appellate counsel is not constitutionally ineffective in failing to raise issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). A defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal.

¶ 82    In the present case, the defendant has failed to establish that his appellate counsel was ineffective in failing to challenge the introduction of the photographs. Accordingly,

30

the circuit court properly dismissed this claimed error at the second stage of the postconviction proceeding.

¶ 83   Intermingled with his argument concerning the photographs are undeveloped arguments that suggest that the defendant was denied his right to a speedy trial and that the State committed a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to turn over notes of the investigating officer who recorded the interviews of the victims. The defendant failed to include these claimed errors in his amended postconviction petition; therefore, the arguments are forfeited. *People v. Jones*, 213 Ill. 2d 498, 507-08 (2004). In addition, the defendant has forfeited these claimed errors by failing to comply with the requirement of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 84        G. Admission of Out of Court Statements Made for Medical Treatment

¶ 85   Next, the defendant argues that the circuit court erred in admitting out of court statements made by Tyeshia about her being mad "at her mom's boyfriend." The defendant raised this issue in his amended postconviction petition.

¶ 86   During the trial, Dr. St. Germain testified that Tyeshia reported that she was "mad at her mom's boyfriend." In addition, another witness testified that Tyeshia shared that same information as part of the history taken for medical purposes. The defendant failed to raise this issue on direct appeal but argued in his amended postconviction petition that his appellate counsel was ineffective for failing to raise the issue on appeal.

¶ 87   Section 115-13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-13 (West 2008)) provides that in prosecutions for predatory criminal sexual assault:

"statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

¶ 88    The statements were admissible under this statutory exception to the hearsay rule. Accordingly, appellate counsel was not constitutionally ineffective in challenging the admission of this testimony.

¶ 89    Furthermore, the evidence was not prejudicial. The evidence of these out of court statements was presented to the jury during the course of permissible testimony about Tyeshia's physical complaints and symptoms given to medical providers. As the circuit court observed, "the victims in this case testified in considerable detail as to the offenses and were subject to cross-examination, making the medical witness hearsay testimony pale in comparison and thereby leaving this Court unconvinced that the Defendant was prejudiced by evidence that the child 'was mad at her mom's boyfriend.' " We agree with the circuit court's assessment of the prejudicial effect of the challenged testimony. This claimed error does not provide us with a basis for reversing the circuit court's dismissal of the amended postconviction petition.

¶ 90    In his brief, the defendant also appears to argue that it was improper for Dr. St. Germain to explain to the jury why there was often no physical signs of sexual abuse unless the victim is examined within the first 24 to 48 hours after the assault. The defendant failed to include this claimed error in his *pro se* postconviction petition or in his amended

postconviction petition; therefore, this argument forfeited. *Jones*, 213 Ill. 2d at 507-08.

Although the defendant argues that postconviction counsel was ineffective in failing to

include this issue in the amended postconviction petition, as we stated above,

postconviction counsel was not required to comb the record for issues not raised in the

defendant's *pro se* postconviction petition. *Helton*, 321 Ill. App. 3d at 424-25. In addition,

a postconviction petitioner is "not entitled to the advocacy of counsel for purposes of

exploration, investigation and formulation of potential claims." *Davis*, 156 Ill. 2d at 163.

¶ 91                    H. Illinois Supreme Court Rule 431(b)

¶ 92     The defendant next argues that he was denied a fair trial due to the circuit court's

failure to properly comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007).

Illinois Supreme Court Rule 431(b) requires the circuit court to explain the following four

principles to prospective jurors during *voir dire*: (1) that the defendant is presumed

innocent of the offenses charged; (2) that the State must prove the defendant's guilt beyond

a reasonable doubt; (3) that the defendant is not required to present any evidence; and

(4) that the defendant is not required to testify, and if he chooses not to do so, jurors may

not draw any negative inferences from this fact. Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

The rule requires the circuit court to ask all prospective jurors whether they both understand

and accept each of these principles, also known as *Zehr* principles. *People v. Thompson*,

238 Ill. 2d 598, 606 (2010); see also *People v. Zehr*, 103 Ill. 2d 472, 477 (1984).

¶ 93     In the present case, the defendant argues that the circuit court did not advise

potential jurors of the fourth *Zehr* principle, *i.e.*, the circuit court failed to question potential

jurors whether they understood and accepted the principle that a defendant's failure to

33

testify cannot be used against him. The defendant also argues that the circuit court failed to allow each individual juror the opportunity to answer the judge directly as to whether he or she understood and accepted each principle. However, at the trial, the defendant failed to raise any objections to the circuit court's questioning of potential jurors.

¶ 94 Failure to object to the circuit court's questioning during *voir dire* forfeits appellate review of a claimed error in the circuit court's explanation of the *Zehr* principles. *People v. Belknap*, 2014 IL 117094, ¶ 47. Therefore, the issue is reviewable only under the plain error rule. The plain error rule allows a reviewing court to review a forfeited error affecting substantial rights under one of two alternative prongs: (1) the evidence is so closely balanced that the conviction may have resulted from the error and not the evidence, or (2) the error is so serious that the defendant was denied a substantial right and a review of the forfeited error preserves the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 95 In addition, because this issue was not raised on direct appeal, the defendant must establish that his appellate counsel was ineffective in failing to raise the issue on direct appeal. Therefore, the issue before us is whether the defendant's appellate counsel could have established that the circuit court's failure to strictly comply with Rule 431(b) in this case constituted plain error.

¶ 96 The initial analytical step under either prong of the plain error rule is determining whether there was a clear or obvious error at the trial. *People v. Piatkowski*, 225 Ill. 2d 551, 556 (2007). In dismissing the defendant's claimed error with respect to the *Zehr* principles, the circuit court agreed that its Rule 431(b) admonishments did not strictly comply with

34

the rule with respect to the fourth *Zehr* principle. The circuit court found, however, that the defendant was not prejudiced by the error because the defendant testified at his trial and presented evidence in his defense. The circuit court also found that the potential jurors were properly advised of the other three *Zehr* principles and "the impaneled jurors received a verbal and written instruction to follow those principles, and evidently they did because the [d]efendant was acquitted of three of the counts after four hours of deliberation."

¶ 97　A lack of strict compliance with Rule 431(b) does not result in an automatic reversal. *People v. Williams*, 409 Ill. App. 3d 408, 413 (2011). The questioning mandated by Rule 431(b) "is simply one way of helping to ensure a fair and impartial jury," and failure to comply with the rule "does not necessarily result in a biased jury." *People v. Thompson*, 238 Ill. 2d 598, 610-11 (2010). Therefore, our supreme court had held that a circuit court's failure to strictly comply with Rule 431(b)'s requirements does not amount to second prong structural error unless the circuit court empaneled a biased jury. Therefore, with no evidence of a biased jury, a claimed error with respect to *Zehr* principles is reviewable only under the first prong of the plain error rule, not the second prong. *People v. Wilmington*, 2013 IL 112938, ¶ 26; *People v. Sebby*, 2017 IL 119445, ¶ 52 ("A Rule 431(b) violation is not cognizable under the second prong of the plain error doctrine, absent evidence that the violation produced a biased jury.").

¶ 98　Here, the defendant has not established that the jury was biased and, therefore, he has failed to establish error under the second prong of the plain error rule. *Belknap*, 2014 IL 117094, ¶ 47. With respect to the first prong of the plain error rule, the defendant must establish that the evidence was so closely balanced that the jury's guilty verdict may have

resulted from the error and not the evidence. *Herron*, 215 Ill. 2d at 178. The evaluation of whether the evidence was closely balanced involves a qualitative, commonsense assessment of the totality of the evidence within the context of the case. *Sebby*, 2017 IL 119445, ¶ 53. The reviewing court must look at the evidence on the elements of the charged offense along with any evidence regarding the witnesses' credibility. *Id*. In the present case, after a careful review of the record, we agree with the circuit court that the defendant has failed to establish plain error under the first prong of the plain error rule.

¶ 99    The State presented the consistent testimonies of the victims, Tyeshia and Tashirah. Both Tyeshia and Tashirah offered detailed testimony of not only what the defendant did to them but what they observed the defendant do to each sibling. The victims' testimony at trial was corroborated by their statements given during their forensic interviews. When Tyeshia first reported the abuse, the investigators kept the children apart and interviewed them separately. When reviewing whether the evidence was closely balanced, we find it compelling that each child gave nearly identical details of the abuse during their separate interview and find that the evidence of the defendant's guilt was not closely balanced.

¶ 100  In addition, as the circuit court observed, prejudice resulting from the absence of an admonishment about the defendant's right to refuse to testify was curtailed by the defendant's decision to testify. See *People v. Albarran*, 2018 IL App (1st) 151508, ¶ 58 ("Here, defendant simply cannot obtain plain error relief based on the circuit court's failure to ask potential jurors whether they understood that a defendant is not required to offer any evidence on his behalf because defendant *did* offer evidence on his behalf at trial." (Emphasis in original.)). Also, Rule 431(b) is not violated by the circuit court giving the

admonishments to the venire as a group as long as jurors were given the opportunity to respond. *Thompson*, 238 Ill. 2d at 607. The record establishes that the jurors were given the opportunity to respond to the circuit court's Rule 431(b) admonishments.

¶ 101 The defendant alludes to the fact that one of the jurors worked as an administrative secretary with the State's Attorneys Appellate Prosecutor's office and had worked for a period of time with one of the prosecutors. However, the juror in question was questioned thoroughly during *voir dire* and told the circuit court that she would be a fair and impartial juror. The circuit court denied the defendant's request that the juror be excused for cause. A challenge for cause is left to the discretion of the circuit court, and we will not reverse that decision in absence of an abuse of discretion. *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011). Based on the record before us, the defendant has failed to establish that the circuit court erred in failing to excuse the juror for cause.

¶ 102                                  I. State's Closing Argument

¶ 103 Next, the defendant argues that he was denied a fair trial due to the prosecutor misstating the evidence during closing argument when the prosecutor stated that Tyeshia's hymen had an "opening" in it. Dr. St. Germain testified that Tyeshia had "less hymen" in the 5 o'clock position which was not a typical finding in a child Tyeshia's age. The doctor did not testify about an "opening" in the hymen as stated by the prosecution during closing arguments.

¶ 104 In dismissing this claimed error at the second stage of the postconviction proceeding, the circuit court found that this misstatement of the evidence during closing argument was not substantial enough to deny the defendant a fair trial. Specifically, the

37

circuit court noted that the "jury was instructed that closing arguments are not evidence" and that nothing had been presented by the defendant to show that but for the prosecutor's misstatement, the defendant would have been acquitted. We agree with the circuit court analysis.

¶ 105 The defense did not object to the prosecutor's misstatement of the evidence. Therefore, on direct appeal, the defendant's appellate counsel would have to argue that the error constituted plain error. *People v. Theis*, 2011 IL App (2d) 091080, ¶ 47. A prosecutor's improper remarks during closing argument do not merit reversal unless they result in substantial prejudice to the defendant. *People v. Kitchen*, 159 Ill. 2d 1, 38 (1994).

¶ 106 Our review of the record indicates that the prosecution did not place great emphasis on the physician's findings and the isolated comment was not a material factor in the State's case and the defendant's conviction. *People v. Woods*, 2011 IL App (1st) 091959, ¶ 42. In addition, the jury was properly instructed that closing arguments were not evidence. *People v. McGee*, 2015 IL App (1st) 130367, ¶ 72. As we explained above, the evidence of the defendant's guilt was not closely balanced. Therefore, the defendant has failed to establish that appellate counsel could have successfully argued plain error on appeal. The results of the defendant's appeal would not have been different had appellate counsel raised this issue on direct appeal. *People v. Childress*, 191 Ill. 2d 168, 175 (2000). Accordingly, the circuit court properly dismissed this claimed error at the second stage of the postconviction proceeding.

¶ 107                                    J. Sentencing

¶ 108  Finally, the defendant argues that he was improperly sentenced to natural life in prison for each count. Again, this is an issue that could have been raised on direct appeal but was not raised. In the postconviction proceeding, the defendant argues that his appellate counsel was ineffective for failing to raise the issue on direct appeal. We disagree.

¶ 109  The circuit court sentenced the defendant pursuant to section 12-14.1(b)(1.2) of the Criminal Code of 1961 (720 ILCS 5/12-14.1(b)(1.2) (West 2002) (now see 720 ILCS 5/11-1.40(b)(1.2) (West 2020))), which stated that "[a] person convicted of predatory criminal sexual assault of a child committed against 2 or more persons regardless of whether the offenses occurred as the result of the same act or of several related or unrelated acts shall be sentenced to a term of natural life imprisonment." We upheld the constitutionality of this sentencing provision in the defendant's direct appeal. *Oats*, 2013 IL App (5th) 110556, ¶¶ 47-62.

¶ 110  A defendant may be prosecuted for more than one criminal act that arises from the same episode or transaction, so long as the charges do not arise from the same physical act. *People v. Segara*, 126 Ill. 2d 70, 77 (1988). With respect to offenses involving sexual assault, a defendant may be convicted on each act of penetration. See *People v. Bishop*, 218 Ill. 2d 232, 247 (2006). Each act of sexual assault constitutes a discrete offense permitting multiple sentences. *People v. Foley*, 206 Ill. App. 3d 709, 718 (1990). Therefore, the circuit court's sentences were proper.

¶ 111        III. CONCLUSION

¶ 112 For the foregoing reasons, we affirm the circuit court's judgment dismissing the amended postconviction petition at the second stage of the postconviction proceeding.


¶ 113 Affirmed.