# Illinois Official Reports

## Appellate Court

---

### *People v. Perry*, 2017 IL App (1st) 150587

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORDELL PERRY, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-0587 |
| Filed<br>Rehearing denied | December 21, 2017<br>February 1, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CR-11283; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Elena B. Penick, of State Appellate Defender's Office, of Elgin for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice Gordon concurred in the judgment and opinion. |

¶ 1    Defendant Cordell Perry appeals the trial court's second stage dismissal of his successive petition for postconviction relief, arguing that his postconviction counsel rendered unreasonable assistance by withdrawing a supporting affidavit and tacitly agreeing to dismissal of his petition and that the $105 costs assessment must be vacated.

¶ 2    Following a jury trial, defendant was convicted of first degree murder in connection with the shooting of the victim, Denzel Calhoun, on April 1, 2005, at Magnum Motors at Cicero and Wabansia Avenues in Chicago. Defendant was sentenced to a term of 65 years in prison, which included a mandatory enhancement for discharging a firearm.

¶ 3    At trial, Latavia Hayden testified that on April 1, 2005, she was with her boyfriend, Calhoun, at Magnum Motors because Calhoun was selling his car and buying a new one. While Calhoun filled out paperwork, Hayden stepped onto the balcony to smoke a cigarette and noticed defendant standing on the corner. Hayden and Calhoun left the office to transfer Calhoun's belongings from his old car to his new one. As Calhoun walked between two SUVs, shots were fired, and Calhoun fell to the ground. Defendant stood in one spot as he fired one shot to Calhoun's head and three or four shots at Calhoun's body.

¶ 4    Hayden identified defendant as the shooter by his nickname, Bushwick, to police that afternoon. She subsequently identified defendant in a photo array, a lineup, and in court. Hayden admitted that she told her friend, Keisha Reese, that she did not see the shooter's face. Hayden testified that she said that to Reese because Reese would discuss their conversation with other people. Hayden also testified that she knew a man named Vernon Holman from the neighborhood, but she denied seeing him at the car lot. The trial court sustained the State's objection to questions regarding any prior relationship Hayden may have had with Holman.

¶ 5    Holman testified that he knew Hayden and defendant and that he sold drugs near Magnum Motors. On April 1, 2005, while cutting through the car lot, he saw Hayden talking to a man who looked like Calhoun, whom he had not met. As Holman passed by, he noticed defendant, who was wearing a coat and a black hoodie, standing alone between two vans on the lot. As Holman walked toward Wabansia Avenue, he heard three or four shots, at which point he ran home. Holman had two prior felony convictions for murder and possession of a controlled substance with intent to deliver. On April 2, 2005, Holman was arrested on a drug charge and initially denied knowing about the Calhoun shooting. Holman gave information to the police about the shooting several days later. Holman also had a pending misdemeanor charge. He testified that the State had not promised him anything for his testimony. An assistant public defender testified that on May 11, 2007, Holman told her that he had not seen defendant in the car lot on April 1, 2005, and was afraid of being charged with perjury.

¶ 6    Boykin Gradford testified that he and his wife were driving on Cicero Avenue when he heard shots. Gradford saw a short, stocky African-American man wearing a black hoodie and a white "do-rag" standing behind an SUV on the lot, with his arm outstretched and a gun in his hand. Gradford also saw the victim standing between two parked cars, approximately three to four feet away from the shooter. He saw the victim fall to the ground and did not recall any shots fired thereafter. On April 7, 2005, Gradford viewed a lineup and thought defendant looked like the shooter but was not 100% certain. The viewing was recorded by police as a "negative lineup." Officer Robert Bullock testified that his case report did not

reflect Gradford saying he saw a man with a gun. Detective Stanley Colon testified that when he interviewed Gradford on April 1, 2005, Gradford did not mention seeing a gun fired or someone running with a gun.

¶ 7 After police arrested defendant on April 6, Detective Michael Barz interviewed him. Detective Barz testified that defendant admitted he was at the scene of the shooting, but he denied seeing who fired the shots. Defendant further stated that he recognized Calhoun as the man who killed his friend, Anderson Thomas, also known as "Shug." Defendant had a tattoo on his arm that read "RIP Shug."

¶ 8 A certified copy of Calhoun's 1993 murder conviction was entered into evidence.

¶ 9 The jury found defendant guilty of first degree murder, and the court sentenced him to 65 years in prison. On direct appeal, defendant argued that the trial court excessively restricted his attempts to cross-examine the State's witnesses and present a theory of defense, the trial court erred in refusing defense counsel's request for a jury instruction on the meaning of the reasonable doubt standard, and the trial court erred in refusing defense counsel's request for the jury to be given an addict instruction regarding Holman. This court affirmed defendant's conviction and sentence on direct appeal. *People v. Perry*, No. 1-07-2761 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10 In July 2010, defendant filed his *pro se* postconviction petition, raising several allegations of ineffective assistance of trial counsel. Specifically, the petition alleged (1) the failure to investigate and call several witnesses, including forensic witnesses, witnesses who would have testified that Hayden had been romantically involved with defendant's brother, which ended when defendant exposed Hayden's infidelity, and that Hayden was romantically involved with Holman at the time of Calhoun's murder, and a witness who witnessed Holman admit to committing the murder; (2) trial counsel refused to allow defendant to testify at trial and coerced him to waive his right to testify; (3) trial counsel presented a defense theory he knew to be false; and (4) cumulative error based on these allegations. Defendant attached four affidavits, one from himself and three from potential witnesses, but none were notarized. The trial court summarily dismissed defendant's petition in September 2010. Defendant appealed, and this court affirmed the dismissal. *People v. Perry*, 2012 IL App (1st) 103225-U.

¶ 11 In April 2013, defendant filed his *pro se* successive postconviction petition asserting a claim of actual innocence. In support of his petition, defendant attached an affidavit purportedly from Hayden. In the affidavit, Hayden averred that she did not see who shot Calhoun. She identified defendant "after pressure" from the police and the assistant State's Attorney (ASA). She was given defendant's name from detectives. Hayden stated that prior to defendant's trial, she was advised by the ASA with the details of her testimony, including that she was not forced to identify defendant. She further averred that she was now willing to testify that she did not see defendant shoot Calhoun and she did not see who killed Calhoun. She "falsely testified and identified [defendant] at his trial, because [she] had already lied in [her] statement and [she] feared prosecution." She stated that she was not forced or induced to give this statement. The affidavit was signed and notarized and included a photocopy of Hayden's state identification card.

¶ 12 In June 2013, the trial court docketed defendant's successive petition. The public defender was appointed to represent defendant. In March 2014, defendant's public defender filed her Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) certificate, stating that she

had spoken with defendant, had examined the proceedings and trial record, and had not amended defendant's petition. In June 2014, at a status hearing, the prosecutor stated that she had conducted an investigation and had related the results of the investigation to defendant's postconviction counsel to review. In August 2014, postconviction counsel answered ready for a third stage hearing and asked for a status date to set the hearing.

¶ 13    In September 2014, the State filed its answer to defendant's postconviction petition. In its answer, the State agreed that defendant had "met the burden required to proceed to a stage three post conviction hearing." Also in September 2014, postconviction counsel filed a motion to disqualify the assigned ASA. The motion asserted that counsel received a written investigative report prepared by an ASA investigator. The written report noted that Hayden stated in an interview with the ASA that Hayden did not sign the affidavit and her identification had been stolen. The ASA also gave counsel a DVD of an interview with Hayden and the ASA recorded in June 2014. On information and belief, the video was recorded by the ASA investigator. Hayden stated in the video interview that her identification was lost. Counsel stated that based on the investigation, the ASA's testimony for impeachment purposes "may be vital," and the ASA was potential witness at the evidentiary hearing. The trial court denied counsel's motion following a hearing.

¶ 14    In October 2014, the parties appeared for the evidentiary hearing. Counsel waived defendant's appearance and asked for a date. She stated that she "may have made some mistakes that [would] cause this to come back on a remand, so I'm asking for date." When asked by the trial court what she meant, counsel responded, "It means that I need to, I talked to my supervisor on the phone and he raised some issues, so I don't want to go through the evidentiary hearing an[d] have it come back on appeal."

¶ 15    In December 2014, counsel filed a motion to withdraw Hayden's affidavit "after much investigation" and to substitute an affidavit from defendant. Defendant's affidavit simply stated his date of birth, current address in prison, a statement that "I am innocent of all charges and I still maintain my innocence," and that this affidavit was attached to and incorporated by reference to his postconviction petition.

¶ 16    At the hearing on the motion, the ASA asserted that defendant's affidavit cannot meet the burden to set forth actual innocence and orally moved to dismiss defendant's petition. Postconviction counsel responded that she would waive notice and had no argument. The court stated it needed to take the matter under advisement because the court had not had a situation like this before and wanted to look into it.

¶ 17    At a status hearing in January 2015, postconviction counsel informed the trial court that she needed to file an amended Rule 651(c) certificate. She stated that she had received a letter from defendant. She said that defendant was "under the misapprehension of—regarding me withdrawing the affidavit. My position still stands. I'm just asking, so this doesn't come back on an ineffective assistance of counsel." The amended Rule 651(c) certificate stated:

> "I have consulted with Petitioner, Cordell Perry, by phone, mail, electronic mean or in person to ascertain his contentions of deprivation of constitutional rights; I have examined the record of the proceedings at the trial, Petitioner's post-conviction claims and investigated the Affidavit attached to the *pro se* Petition; I have attached a new Affidavit to the *pro se* Petition but I have made no amendment to the *pro se* Petition previously filed, as the *pro se* Petition is sufficient for the adequate presentation of Petitioner's contentions."

¶ 18    At the next status hearing in January 2015, postconviction counsel informed the trial court as follows.

> "The reason the case passed the first stage was due to the affidavit. And the affidavit, according to my own investigations, and with the State's investigations, as an officer of the Court, I cannot proceed with the affidavit."

Counsel indicated that defendant "does not agree" with her, but "as an officer of the Court, I stand by my decision." The trial court subsequently issued a written order dismissing defendant's postconviction petition because the petition with defendant's "self-serving affidavit" was "frivolous and completely without merit." The court then assessed $105 in filing fees, $90 for filing the petition, and $15 for mailing fees.

¶ 19    This appeal followed.

¶ 20    On appeal, defendant argues that his postconviction counsel rendered unreasonable assistance by withdrawing the affidavit purportedly by Hayden over defendant's objection and tacitly agreeing to the dismissal of his petition.

¶ 21    The Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 to 122-8 (West 2012)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a)(1) (West 2012); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999).

¶ 22    At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). If the circuit court does not dismiss the postconviction petition as frivolous or patently without merit, then the petition advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2012)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2012)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2012). "Only those claims in which a substantial showing has been made entitle the defendant to an evidentiary hearing." *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 55 (citing *People v. Lara*, 317 Ill. App. 3d 905, 908 (2000)).

¶ 23    However, the Post-Conviction Act only contemplates the filing of one postconviction petition with limited exceptions. 725 ILCS 5/122-1(f) (West 2012); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). The supreme court has recognized two bases upon which the bar against successive proceedings will be relaxed. *People v. Edwards*, 2012 IL

111711, ¶ 22. First, under section 122-1(f), a defendant must satisfy the cause and prejudice test for failure to raise the claim earlier in order to be granted leave to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2012). The second basis to relax the bar against a successive postconviction is "what is known as the 'fundamental miscarriage of justice' exception." *Edwards*, 2012 IL 111711, ¶ 23. "The United States Supreme Court has stated that the exception serves as an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty [citation], guaranteeing that the ends of justice will be served in full." (Internal quotation marks omitted.) *Id.* (quoting *People v. Szabo*, 186 Ill. 2d 19, 43 (1998) (Freeman, C.J., specially concurring, joined by Heiple, J.), quoting *McCleskey v. Zant*, 499 U.S. 467, 495 (1991)).

¶ 24    "In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence." *Id.* With respect to those seeking to relax the bar against successive postconviction petitions on the basis of actual innocence, the supreme court has held that "leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *Id.* ¶ 24. "Stated differently, leave of court should be granted when the petitioner's supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "The elements of a claim of actual innocence are that the evidence in support of the claim must be 'newly discovered'; material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 32 (citing *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009)).

¶ 25    The issue before us on appeal does not involve a consideration of the merits of defendant's petition, but rather a review of whether defendant received a reasonable level of assistance as he was entitled during the postconviction proceedings.

¶ 26    Defendant in postconviction proceedings is only entitled to a "reasonable" level of assistance, which is lower than the standard given under federal or state constitutions. *Pendleton*, 223 Ill. 2d at 472. "Counsel's duties, pursuant to Rule 651(c), include consultation with the defendant to ascertain his contentions of deprivation of constitutional right, examination of the record of the proceedings at the trial, and amendment of the petition, if necessary, to ensure that defendant's contentions are adequately presented." *Id.*; see also Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984). Under Rule 651(c), postconviction counsel is required "to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Pendleton*, 223 Ill. 2d at 475-76 (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). Postconviction counsel may conduct a more thorough examination of the record and raise additional claims, but he or she is under no obligation to do so. *Id.* at 476. Postconviction counsel is not required to advance frivolous or spurious claims and " 'is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Id.* at 475 (quoting *Davis*, 156 Ill. 2d at 164). "[E]thical obligations prohibit counsel from doing so if the claims are frivolous or spurious." *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008) (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). "The question remains what should counsel do if counsel investigates the claims but finds them without merit." *Id.* Illinois case law provides options: (1) "stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not

amended" or (2) withdraw as counsel. *Id.* "In both of these scenarios, the allegations in the *pro se* petition remained to proceed according to the parameters of the Act." *Id.*

¶ 27 We find the supreme court's discussion in *People v. Kuehner*, 2015 IL 117695, describing postconviction counsel's responsibilities in filing a motion to withdraw, to be instructive. When at the second stage of proceedings after the trial court has found that petition is not frivolous or without merit, then "appointed counsel's task is not to second guess the trial court's first-stage finding but rather is to move the process forward by cleaning up the defendant's *pro se* claims and presenting them to the court for adjudication." *Id.* ¶ 20. However, the supreme court acknowledged that postconviction counsel may discover "something that ethically would prohibit [him or her] from actually presenting the defendant's claims to the court." *Id.* ¶ 21. Postconviction counsel "bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect." *Id.* The supreme court compared postconviction counsel's motion to withdraw to a motion to reconsider, in that "a motion to withdraw filed subsequent to a trial court's affirmative decision to advance the petition to the second stage does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Id.* Therefore, "where a *pro se* postconviction petition advances to the second stage on the basis of an affirmative judicial determination that the petition is neither frivolous nor patently without merit, appointed counsel's motion to withdraw must contain at least some explanation as to why all of the claims set forth in that petition are so lacking in legal and factual support as to compel his or her withdrawal from the case." *Id.* ¶ 27.

¶ 28 In this case, postconviction counsel did not stand on the petition or move to withdraw but withdrew a supporting affidavit over defendant's objection. Defendant argues that counsel's decision to withdraw the affidavit rather than withdraw as counsel deprived him of reasonable assistance. In the trial court, defendant's petition raising a claim of actual innocence was advanced to the second stage, and postconviction counsel was appointed to represent defendant. Initially, counsel filed a Rule 651(c) certificate indicating that she was not amending defendant's petition as it adequately presented his postconviction claims. The State agreed that the petition should be advanced to a third stage evidentiary hearing. Later, the State disclosed that its investigation called into question the authenticity of the Hayden affidavit attached to defendant's petition. Hayden was interviewed by an ASA and an investigator and stated that she did not sign the affidavit and her identification had been stolen. Subsequently, postconviction counsel moved to withdraw Hayden's affidavit "after much investigation" but did not describe her investigation. Counsel then substituted defendant's affidavit in which he simply proclaims his innocence. The State then orally moved to dismiss the petition and postconviction counsel waived notice and offered no argument. The trial court took the motion under advisement and later dismissed the petition as frivolous and without merit because defendant's affidavit failed to set forth the elements necessary to establish a claim of actual innocence. Postconviction counsel also filed an amended Rule 651(c) certificate indicating her withdrawal and substitution of affidavits. Counsel also stated on the record that defendant did not agree with her actions, but "as an officer of the Court, I stand by my decision."

¶ 29 Defendant relies on two decisions to support his claim of unreasonable assistance of postconviction counsel. In *People v. Shortridge*, 2012 IL App (4th) 100663, the defendant had plead guilty to one count of criminal drug conspiracy. He subsequently filed a *pro se* postconviction petition arguing ineffective assistance of trial counsel and due process violations. He attached his own affidavit, denying his involvement in a drug conspiracy. *Id.* ¶¶ 3-4. Postconviction counsel filed a Rule 651(c) certificate but did not amend the defendant's petition. The State moved to dismiss the defendant's petition. At a hearing, postconviction counsel stated that he was " 'going to confess the motion to dismiss.' " *Id.* ¶ 6. The court then dismissed the petition. Defendant later filed *pro se* motions for withdrawal of postconviction counsel and to reconsider the dismissal of his petition. The court ruled that the withdrawal motion was moot and the motion to reconsider was stricken for not being filed by counsel. *Id.* ¶ 7.

¶ 30 On appeal, the Fourth District held that "[i]f counsel, in fact, found the allegations 'nonmeritorious,' even with any necessary amendments, then he should have moved to withdraw as counsel, not confess the State's motion to dismiss." *Id.* ¶ 14. The court reversed the dismissal of the defendant's petition and ordered for new counsel to be appointed to represent the defendant. *Id.* ¶ 15. "If newly appointed counsel, after complying with the mandates of Rule 651, determines that defendant's petition lacks any meritorious issue, then he should move to withdraw as counsel. At that point, the circuit court would need to determine whether the record supported counsel's assertion that the petition was without merit." *Id.* "Depending on the court's assessment, defendant could be allowed to proceed *pro se*. In other words, appointed counsel should either represent defendant's interests in the proceedings or move to withdraw." *Id.*

¶ 31 In *People v. Elken*, 2014 IL App (3d) 120580, ¶¶ 19-20, postconviction counsel informed the trial court that the defendant's postconviction petition had no merit by explaining why each issue failed, but he did not move to withdraw. In response, the trial court then dismissed the defendant's postconviction petition " 'based upon arguments of defense counsel.' " *Id.* ¶ 21. The State did not raise its motion to dismiss or make any arguments. *Id.* The defendant filed a motion to reconsider the dismissal of his petition and allowing counsel to withdraw, which the trial court denied. *Id.* ¶¶ 22-23.

¶ 32 On appeal, the Third District noted the "unorthodox procedure" in the trial court and observed that postconviction counsel never moved to withdraw and the record does not show that the trial court allowed counsel to withdraw, but it did dismiss the petition. *Id.* ¶ 27. The reviewing court reversed the dismissal of the defendant's postconviction petition, finding the reversal was warranted when counsel failed to file a motion to withdraw and instead "simply stood up at the hearing and stated that defendant's contentions had no merit." *Id.* ¶ 32. The court reasoned:

> "If counsel finds that defendant's contentions are frivolous or patently without merit at the second stage, he cannot in good faith continue, so he must file a motion to withdraw. If he files a motion to withdraw, he must give his reasons for doing so. He is then, in essence, 'confessing' that the defendant has no viable arguments and is, in essence, agreeing that the petition should be dismissed. Our point is only that the confession is not necessarily wrong, but defendant should be afforded the opportunity to prepare for such an attack on his petition and to make any arguments in rebuttal. He was denied that opportunity here. The appropriate procedure under these

circumstances would be for appointed counsel to file a motion to withdraw, giving defendant notice of the same. This allows defendant to prepare to argue against appointed counsel's motion. It further obviates any opportunity for a defendant to argue that he was blindsided by his appointed counsel's arguments." *Id.* ¶ 36.

¶ 33 The State responds that the circumstances present in this case are distinguishable from *Shortridge* and *Elken*, and are more in line with *People v. Malone*, 2017 IL App (3d) 140165, and *People v. Rivera*, 2016 IL App (1st) 132573. In *Malone*, the defendant's petition advanced to the second stage, and counsel was appointed. The State moved to dismiss the petition, arguing that none of the issues raised had merit. At the hearing on the motion, postconviction counsel stated that he disagreed with the State's motion and then stood on the arguments raised in the petition. Counsel filed a Rule 651(c) certificate and did not amend the defendant's petition. *Malone*, 2017 IL App (3d) 140165, ¶ 5.

¶ 34 On appeal, the defendant argued that he received unreasonable assistance from his postconviction counsel as counsel should have either amended the petition or sought to withdraw from representation. *Id.* ¶ 7. The Third District concluded that once counsel filed a compliant Rule 651(c) certificate, the rebuttable presumption arose that counsel provided reasonable assistance and the defendant failed to rebut that presumption. *Id.* ¶ 11. The court further found that while the supreme court in *Greer*, 212 Ill. 2d at 211, allowed "postconviction counsel to withdraw when the allegations of the petition are without merit and frivolous, it does not *compel* withdrawal under such circumstances." (Emphasis in original.) *Malone*, 2017 IL App (3d) 140165, ¶ 12.

¶ 35 In *Rivera*, the defendant had been convicted of first degree murder as the shooter in a gang-related shooting. In his postconviction petition, the defendant raised a claim of actual innocence based on an affidavit from his codefendant. *Rivera*, 2016 IL App (1st) 132573, ¶ 1. The codefendant had pleaded guilty to first degree murder under a theory of accountability, and in the affidavit, the codefendant stated for the first time that he was the shooter in the murder, not the defendant. *Id.* ¶¶ 6-7. At second stage proceedings, postconviction counsel filed a Rule 651(c) certificate and stated that the defendant's petition adequately presented the claims. The State moved to dismiss the petition, asserting that the codefendant's affidavit was unreliable. *Id.* ¶¶ 8-9. At a hearing, the trial court requested the transcript from the codefendant's guilty plea hearing. During a colloquy on that request, postconviction counsel stated, " 'It is probably important to see what the factual basis was.' " *Id.* ¶ 11-12. At a later court date, the trial court indicated that it had obtained the transcript and the factual basis conflicted with the codefendant's affidavit in support of the defendant's postconviction petition. Postconviction counsel offered no argument. The court then dismissed the defendant's petition. *Id.* ¶¶ 14-15.

¶ 36 On appeal, the defendant argued that the trial court erred in considering evidence outside the record of his case in assessing the credibility of his codefendant's affidavit at second stage and that his postconviction counsel provided unreasonable assistance by effectively agreeing that the trial court should consider the transcripts of codefendant's plea hearing. Based on the supreme court's decision in *People v. Sanders*, 2016 IL 118123, the reviewing court held that the trial court erred in considering evidence outside the record of the defendant's case. Nevertheless, the court affirmed the dismissal after concluding that the codefendant's affidavit was not of such conclusive character that it would probably change to result on retrial. *Rivera*, 2016 IL App (1st) 132573, ¶ 33.

¶ 37    Finally, the reviewing court concluded that postconviction counsel's representation of the defendant did not fall below the standard set forth in Rule 651(c). In reaching this conclusion, the court distinguished that case from *Shortridge*, noting that "at no point did counsel express the view that defendant's postconviction claims were without merit, as occurred in *Shortridge*. Instead, counsel told the court he would 'stand on the *pro se* petition' of defendant." *Id.* ¶ 39. Further, "[u]nlike in *Shortridge*, postconviction counsel's remark in this case that the factual basis for [the codefendant's] plea was 'probably important' did not represent a concession of the petition's merits." *Id.*

¶ 38    The State contends that in *Rivera* the court drew a line in the sand between those actions which affirmatively damage a defendant's claims (*Shortridge* and *Elken*) and either passive or forfeited actions which, at most, result in a failure to advance a defendant's specific claim (*Rivera*). The State further asserts that this case falls into the latter category because postconviction counsel never indicated that defendant's claim of actual innocence was frivolous or without merit. According to the State, any claim that the withdrawal of the Hayden affidavit over defendant's objection damaged defendant's claim should be rejected because the affidavit had "no evidentiary value" based on the ASA's and postconviction counsel's investigations. We disagree with the State.

¶ 39    We find the circumstances in this case more analogous to *Shortridge* and *Elken*. While postconviction counsel did not explicitly "confess" that the petition was frivolous and without merit, counsel's actions fell below a reasonable level of assistance. Here, postconviction counsel acted, over defendant's objection, to withdraw the Hayden affidavit from defendant's petition and substituted defendant's self-serving affidavit. While the record establishes serious questions regarding the reliability of the Hayden affidavit, counsel's actions amounted to an affirmative action that damaged defendant's claims. Defendant's claim of actual innocence could not stand absent Hayden's affidavit, as defendant's bald assertion of innocence cannot support a claim of actual innocence. See *Edwards*, 2012 IL 111711, ¶ 32. As our analysis illustrates, when confronted with an ethical dilemma, such as the authenticity of the Hayden affidavit, counsel has two options: stand on the petition or move to withdraw. Counsel in this case took neither option and removed the factual support from defendant's petition and then tacitly agreed with the State's oral motion to dismiss the petition. Defendant was given no opportunity to respond to his counsel's actions. Accordingly, we reverse the dismissal of defendant's postconviction petition and remand for new second stage proceedings on his original *pro se* successive postconviction petition with new counsel appointed to represent defendant. New counsel will have the opportunity to review defendant's petition and the record and either proceed in his or her representation or move to withdraw, allowing defendant an opportunity to respond.

¶ 40    Since we have remanded the case for new second stage proceedings, we vacate the imposition of the $105 fees and costs assessed against defendant for filing a frivolous petition. See 735 ILCS 5/22-105 (West 2012); 705 ILCS 105/27.2a (West 2012). We make no finding as to whether the fees may be assessed based on the proceedings on remand.

¶ 41    Based on the foregoing reasons, we reverse the dismissal of defendant's successive postconviction petition and remand for further proceedings in accordance with this decision.

¶ 42    Reversed and remanded.