2022 IL App (1st) 201341-U

No. 1-20-1341

Order filed November 10, 2022

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 13771 |
| | ) | |
| RICHARD KUPFERSCHMIDT, | ) | Honorable |
| | ) | Arthur F. Hill Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justice Cunningham and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The summary dismissal of defendant's *pro se* postconviction petition is affirmed where defendant did not raise an arguable claim of actual innocence.

¶ 2    Defendant Richard Kupferschmidt appeals from the summary dismissal of his *pro se*

petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2020)).[1]

Kupferschmidt contends that he raised an arguably meritorious claim of actual innocence based

---

[1] Defendant's surname was spelled "Kuperschmidt" in a prior order. In this order, we adopt the spelling used throughout the record.

on the affidavit of his mother, a co-offender, who attested that Kupferschmidt acted with an innocent state of mind. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Kupferschmidt, his mother Janet Yurus, and two others planned to steal money from and kill Henry Wrobel, Yurus's elderly uncle. Pursuant to the plan, Kupferschmidt went to Wrobel's house with Ricardo Pabon, Israel Munoz-Gallardo, and Saul Ayala. Kupferschmidt called Wrobel outside and engaged him in a conversation while Pabon and Munoz-Gallardo snuck into Wrobel's house. When Wrobel went back into the house, Pabon and Munoz-Gallardo murdered him.

¶ 5      Yurus was convicted of first degree murder after a jury trial in 2010. *People v. Yurus*, 2012 IL App (1st) 110235-U, ¶ 2. Our order affirming her conviction on direct appeal reflects that she gave police a statement admitting that she planned to steal Wrobel's money with Kupferschmidt. *Id.* ¶¶ 17-18. Witnesses stated to police that Yurus and Kupferschmidt met to discuss plans to kill and to rob Wrobel. *Id.* ¶¶ 9, 19. However, at trial, the witnesses recanted their statements, and Yurus denied that she admitted to police that she wanted to rob Wrobel. *Id.* ¶ 20. Yurus was sentenced to 32 years of imprisonment.

¶ 6      After his mother's conviction, Kupferschmidt pleaded guilty to first degree murder with a dangerous weapon in exchange for a 25-year sentence. The court accepted the above factual account as the basis for Kupferschmidt's guilty plea. Kupferschmidt never filed a motion to withdraw his plea.[2]

---

[2] In 2013, Kupferschmidt filed a *pro se* motion for leave to file a late notice of appeal in this court. We denied the motion due to lack of jurisdiction. *People v. Kuperschmidt*, No. 1-13-2446 (2013) (disposition order).

¶ 7    Nine years after pleading guilty, Kupferschmidt filed the instant *pro se* postconviction petition, setting forth a different version of facts regarding Wrobel's murder and subsequent investigation: On May 2, 2001, Yurus asked him to go to Wrobel's house because she could not reach Wrobel by telephone. Ayala drove him, and Pabon and Munoz-Gallardo joined them on the way.

¶ 8    At Wrobel's house, Pabon and Munoz-Gallardo left the vehicle and went next door. Kupferschmidt called Wrobel outside and asked to fix Wrobel's phone because Yurus was trying to contact Wrobel. Wrobel said "O.K." and walked back into the house. Several minutes later, Pabon and Munoz-Gallardo returned and repeatedly said, "Your mom lied, there was no fucking money." From those words, Kupferschmidt assumed that Pabon and Munoz-Gallardo attempted to rob Wrobel. When they all returned home, Munoz-Gallardo told Kupferschmidt that he "better not tell anyone." The following day, Kupferschmidt and his mother went to Wrobel's house, and there, he first discovered that Wrobel was dead.

¶ 9    In early 2005, the police interviewed Kupferschmidt, and he denied any involvement in Wrobel's murder. Kupferschmidt took a lie detector test, and it indicated he was truthful. In May 2005, Kupferschmidt was arrested again. The police told him that they had new information from Pabon and that if Kupferschmidt did not confess, Yurus would receive the death penalty or life imprisonment. To "save" Yurus, Kupferschmidt "made up" a confession from information he previously learned from Pabon. In support of his petition, Kupferschmidt avers that he was not involved in planning or carrying out Wrobel's murder and lacked prior knowledge of the plan.

¶ 10 Yurus avers that Kupferschmidt did not know "the true intent or activity that occurred inside" Wrobel's home and that he confessed "in hopes of freeing" her although he was not involved in the crime. Yurus states that she "accepts responsibility" for what happened.

¶ 11 On October 30, 2020, the circuit court summarily dismissed Kupferschmidt's petition in a written order, finding the issues frivolous and patently without merit. Kupferschmidt timely appealed. Ill. S. Ct. Rs. 606, 651 (eff. July 1, 2017).

¶ 12                                    ANALYSIS

¶ 13 Kupferschmidt argues that the circuit court erred in summarily dismissing his postconviction petition because he stated an arguable claim of actual innocence based on the affidavit from Yurus. Yurus, who previously denied involvement in the crime, now avers that she was responsible for the murder scheme and that Kupferschmidt had no knowledge of the scheme. Kupferschmidt contends that her affidavit casts a "different light" on the evidence presented at the plea hearing, and therefore, his petition should advance to the second stage.

¶ 14 The Post-Conviction Hearing Act provides a three-stage mechanism for imprisoned persons to collaterally challenge convictions for violations of federal or state constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2020); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). At the first stage of postconviction proceedings, the circuit court must independently review the petition, taking the allegations as true, and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A petition is frivolous or patently without merit if it has no arguable basis in law or in fact and, instead, is based on a meritless legal theory or fanciful factual allegations. *People v. Hodges*, 234 Ill. 2d 1, 11-13, 16 (2009).

¶ 15     "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true." *People v. Robinson*, 2020 IL 123849, ¶ 45. In deciding the sufficiency of a petition, "the court is precluded from making factual and credibility determinations." *Id*. Our review of the summary dismissal of defendant's petition is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 16     To state a claim of actual innocence in postconviction proceedings following a guilty plea, a defendant must provide "new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶ 49. "This is a comprehensive approach where the court must determine whether the new evidence places the evidence presented in the underlying proceedings in a different light and 'undercuts the court's confidence in the factual correctness' of the conviction." *Id.* ¶ 49 (quoting *People v. Coleman*, 2013 IL 113307, ¶ 97).

¶ 17     Here, Yurus avers in her affidavit that "at no time did [Kupferschmidt] know the true intent or activity that occurred inside my uncle's home" and that he had "zero" involvement in the crime. How does Yurus *know* this? We have no idea based on her affidavit. It is axiomatic that an affidavit must be based upon the affiant's personal knowledge upon which she could competently testify. *People v. Brown*, 2014 IL App (1st) 122549, ¶ 56 ("An affidavit 'should consist of factual propositions to which the affiant could testify in an evidentiary hearing.'"). Significantly, Yurus was not present when Wrobel was murdered, so it is unclear how she could competently testify as to what occurred in the house during the murder. The same is true of her naked assertions as to her son's state of mind.

¶ 18    An affidavit must contain a factual basis sufficient to show the petition's allegations are capable of objective or independent corroboration and must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the allegations. *People v. Delton*, 227 Ill. 2d 247, 254 (2008); see also 725 ILCS 5/122-2 (West 2018). Yurus's affidavit, at most, offers her conjecture as to Kupferschmidt's knowledge with respect to the murder and contains no factual basis to corroborate her claim. Even when liberally construed, it fails to meet the threshold requirements for a section 122-2 affidavit. 725 ILCS 5/122-2 (West 2018).

¶ 19    Nor does Yurus's affidavit clearly and convincingly demonstrate that a trial would probably result in acquittal. See *Reed*, 2020 IL 124940, ¶ 49 (the evidence must "clearly and convincingly demonstrate[] that a trial would probably result in acquittal). Her affidavit does nothing more than create a conflict with the prosecution's case against defendant. See *People v. Mabrey*, 2016 IL App (1st) 141359, ¶ 30 (where an affidavit merely conflicted with the defendant's confession and eyewitness testimony, it did not arguably exonerate the defendant). With such defects, it can hardly be said that the petition supported by Yurus's affidavit presents an arguable claim of actual innocence in the face of Kupferschmidt's guilty plea.

¶ 20    While the appeal as framed is limited to Yurus's affidavit, it is worth noting that Kupferschmidt's affidavit, too, does not support an arguable claim of actual innocence. Kupferschmidt avers that he was "not involved in the planning or carrying out" of the murder, had no prior knowledge of it, and pled guilty "in order to save [his] mother *** from spending a lot of time in prison." Such a self-serving affidavit is not capable of objective or independent corroboration as required under section 122-2 of the Post-Conviction Hearing Act. See *People v. Perry*, 2017 IL App (1st) 150587, ¶ 39 (where counsel withdrew a codefendant's affidavit, the

defendant's claim of actual innocence could not stand with only the defendant's "self-serving affidavit" asserting his innocence of all charges). Indeed, the acts that constitute Kupferschmidt's involvement in the murder are wholly unchallenged: Kupferschmidt travelled to Wrobel's house with the co-schemers, and Kupferschmidt lured Wrobel out of the house while the co-schemers secretly entered for the purpose of murdering Wrobel.

¶ 21 A guilty plea is "a grave act that is not reversible at the defendant's whim." *Reed*, 2020 IL 124940, ¶ 47. Having reviewed the petition and the supporting affidavits in totality, Kupferschmidt's actual innocence claim does not provide "new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *Id.* ¶ 49. The summary dismissal of his postconviction petition was proper.

¶ 22                                        CONCLUSION

¶ 23 The judgment of the circuit court of Cook County is affirmed.

¶ 24 Affirmed.