2023 IL App (1st) 220813-U
Order filed: July 13, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0813

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 11098 |
| GEORGE SANDERS, | ) ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

*Held*: Second-stage dismissal of defendant's postconviction petition is reversed, and this matter is remanded for further proceedings, where defendant overcame the presumption of reasonable assistance of postconviction counsel created by counsel's filing of a certificate pursuant to Illinois Supreme Court Rule 651(c).

¶ 1     Defendant-appellant, George Sanders, appeals from an order of the circuit court which granted the State's second-stage motion to dismiss his petition for relief under the Post–Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2018). Defendant claims postconviction counsel failed to provide a reasonable level of assistance, as required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we reverse the dismissal of defendant's postconviction petition and remand for further proceedings.

¶ 2      Defendant was charged by indictment with—*inter alia*—attempted first degree murder, aggravated battery with a firearm, and being an armed habitual criminal. The counts generally alleged that on or about June 7, 2014, defendant shot Greg Stewart with a firearm, having been previously convicted of unlawful use or possession of a weapon by a felon. The matter proceeded to a November 2015 jury trial on those charges.

¶ 3      The trial proceedings and the evidence presented at trial were fully set out in a prior order entered on defendant's direct appeal and need not be fully restated here. See *People v. Sanders*, 2018 IL App (1st) 160637-U. For purposes of this appeal, it is sufficient to note that the evidence at trial included the testimony of Stewart's girlfriend, Sheena Johnson. She testified that on June 7, 2014, she was walking with Stewart when she observed defendant and another man, Cheves Dembry, drive past two times. On the second time, defendant was driving the vehicle and she observed multiple shots fired toward Stewart from the driver's side of the vehicle. On cross-examination, Johnson testified that she observed two other people standing nearby that she recognized from the area. Johnson did not know their names.

¶ 4      The jury was also presented with the testimony of Dembry, who at trial disavowed a written statement implicating defendant that he had provided to Assistant State's Attorney Becky Walters and Detective John Salemme on the day after the shooting. Walters then testified at trial that in the written statement, Dembry stated that a man named "Archie Cannon" was standing near the car at the time of the shooting.[1] The statement was entered into evidence at trial and published to the jury.

---

[1] Mr. Cannon's first name is variously identified in the record as Archie, Archer and Arthur.

¶ 5     At the conclusion of trial, the jury acquitted defendant of attempted murder and aggravated battery with a firearm, finding him guilty only on the charge of being an armed habitual criminal. Defendant's posttrial motion was denied and he was sentenced to 10 years' imprisonment. Thereafter, defendant's motion to reconsider his sentence was denied and he filed a direct appeal.

¶ 6     On direct appeal, defendant claimed: "(1) that the State failed to prove beyond a reasonable doubt that defendant had actual or constructive possession of the gun that was the subject of his conviction; (2) that the trial court erred by giving a pattern jury instruction on possession where the instruction included constructive possession and the State failed to present evidence on constructive possession; and (3) that the trial court committed first-prong plain error where it failed to ask potential jurors whether they understood and accepted the *Zehr* principles and the case was closely balanced." *Sanders*, 2018 IL App (1st) 160637-U, ¶ 54. This court rejected these arguments and affirmed defendant's conviction and sentence. *Id*. ¶ 81.

¶ 7     On April 22, 2019, defendant filed a *pro se* postconviction petition raising several claims of ineffective assistance of trial and appellate counsel. These included a claim that trial counsel was ineffective for failing to subpoena "Archer Cannon" and call him to testify at trial. Defendant claimed that he was "prejudiced because, given the closeness of the case, there was a reasonable probability that the additional witness would have raised a reasonable doubt of guilt." Plaintiff's petition concluded by stating that "the facts stated in this petition are true and correct in substance and in fact," along with plaintiff's notarized signature. No affidavits were attached to defendant's *pro se* petition.

¶ 8     The circuit court summarily dismissed the petition 92 days after it was filed, on July 23, 2019. Defendant filed a prior appeal from that dismissal, and on September 16, 2020, this court entered an order granting defendant's "Agreed Motion for Summary Disposition." In that order

we noted that the petition had been improperly summarily dismissed over 90 days after it was filed and docketed, and we therefore vacated the judgment of the circuit court and remanded for second-stage proceedings and the appointment of counsel to represent defendant.

¶ 9     Upon remand, postconviction counsel was appointed and counsel appeared on behalf of defendant for the first time on November 9, 2020. The matter was continued to January 26, 2021, at which time postconviction counsel stated: "I've gone through the transcripts and looked at his petition. There may be one issue about just looking up a possible witness that—there's no affidavit in the petition, but there is his name. And I would just like a date to look into that." After two continuances, postconviction counsel indicated at a hearing on June 3, 2021, that: "We are in the midst of investigation about some individual that should have been contacted by counsel but wasn't. We hope to wrap that up soon." The matter was once again continued.

¶ 10    On August 3, 2021, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Therein, counsel averred that he had: (1) communicated with defendant by "phone, mail electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights;" (2) reviewed the record; and (3) "prepared a supplemental petition for post-conviction relief, augmenting petitioner's *pro se* petition. In combination, they adequately present petitioner's contentions and claims of deprivation of his constitutional rights." Counsel also filed a supplemental postconviction petition in which he asserted that trial counsel's "failure to investigate Archer Cannon and possible witnesses to the incident, and then failing to call Arthur Cannon and the possible witnesses at trial constituted ineffective assistance of counsel." No affidavits were attached to the supplemental petition.

¶ 11    The State responded by filing a motion to dismiss both defendant's *pro se* petition and the supplemental petition filed by postconviction counsel. Therein, the State first asserted the petitions

should be dismissed because "[e]ven with the assistance of counsel, petitioner has neglected to file a verification affidavit pursuant to section 122-1 of the Act, or an information affidavit pursuant to section 122-2 of the Act." The State also argued that some of defendant's claims were barred by *res judicata* because they had been raised and rejected on direct appeal. With respect to Cannon, the State argued that defendant could not establish ineffective assistance of trial counsel "because he has not even made clear what specific aspect of trial counsel's performance was deficient. He has provided no information to indicate that trial counsel was *not* already aware of the existence of *** Cannon" and simply did not call him as a witness as a matter of trial strategy. The State also asserted that it was impossible to ascertain if defendant was prejudiced by the failure to call Cannon as a witness without an affidavit indicating what his testimony might have included. Postconviction counsel did not file a written response to the State's motion.

¶ 12    At the hearing on the State's motion to dismiss, postconviction counsel began by noting that several of defendant's claims "were already brought to the attention of the appellate court on direct appeal and were dealt with there." Counsel then noted that Dembry stated in his written statement that Cannon was present at the time of the shooting and Johnson testified at trial that she observed two other people standing nearby at that time. After noting that defendant's petition raised a claim that trial counsel was ineffective for failing to investigate Cannon or call him to testify at trial, the following colloquy occurred between postconviction counsel and the circuit court:

> "DEFENSE COUNSEL: And just that even with the level of investigation the officers did, there was nothing more to be found about Arthur Cannon.
>
> THE COURT: Did you get an affidavit from Arthur Cannon?
>
> DEFENSE COUNSEL: No. I don't. This is an informal conversation. Nothing that

would help the petition.

THE COURT: You talked to him but you did not secure an affidavit, is that what you are saying?

DEFENSE COUNSEL: I did not talk to Arthur Cannon, just those with the office staff. It was eight years ago regarding what happened.

THE COURT: There is no affidavits from Arthur Cannon that he might say something inculpatory [*sic*] and that's it?

DEFENSE COUNSEL: No. There isn't.

THE COURT: That's it.

DEFENSE COUNSEL: The only other thing—yeah. I would just say there was a cross-examination of another witness, Sheena Johnson. She mentioned there were two other people and does not mention Arthur Cannon.

And it is not clear to me that once the defense counsel heard that, I don't think there was brand new information that could have reinforced anything that the office may have done to look into Arthur Cannon's presence but that's the only other thing.

And it is not clear to me if that could have led to even more investigation once we knew there were two other people and we didn't know that until her cross-examination."

¶ 13    The State responded by asserting again, as it had in its motion, that the petitions did not contain either a verification affidavit or an information affidavit. The State also argued that there was no evidence that trial counsel knew about Cannon before trial, and that without an affidavit from Cannon as to what his testimony might be and "because *Strickland* requires proof of ineffective of assistance both in the performance prong and in the prejudice prong, we don't have enough information to establish trial counsel's ineffective performance at all."

¶ 14    The circuit court granted the State's motion to dismiss after concluding that: (1) some of defendant's claims had been addressed on direct appeal, and (2) prejudice could not be established without an affidavit from Cannon indicating what testimony he could have provided at trial. Defendant thereafter timely appealed.

¶ 15    On appeal, defendant does not contest the dismissal of his petition on the merits. Rather, defendant argues that postconviction counsel provided unreasonable assistance under Supreme Court Rule 651(c).

¶ 16    The Act provides a mechanism for a criminal defendant to challenge his conviction or sentence based upon a substantial constitutional violation. *People v. Morris*, 236 Ill. 2d 345, 354 (2010). The Act provides for a three-step process. *Id.* At the first stage, the trial court must evaluate the petition and determine within 90 days of its filing whether it is frivolous or patently without merit. *Id.* A petition which survives the first stage advances to the second stage where the trial court appoints counsel to represent defendant, and the State may move to dismiss the petition. *People v. Harris*, 224 Ill. 2d 115, 126 (2007).

*¶ 17*    Under the Act, counsel appointed at the second stage must provide a reasonable level of assistance. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). To provide a reasonable level of assistance, Rule 651(c) (eff. July 1, 2017), provides that postconviction counsel must: (1) consult with defendant to ascertain his claims of deprivation of constitutional rights; (2) examine the trial record; and (3) amend the *pro se* petition where necessary for an adequate presentation of defendant's contentions. *Suarez*, 224 Ill. 2d at 42. Postconviction counsel's compliance with Supreme Court Rule 615(c) is mandatory and generally shown by the filing of a certificate averring to such performance. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007).

¶ 18    The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that

postconviction counsel provided reasonable assistance during second-stage proceedings under the Act. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The burden is on the defendant to overcome this presumption by demonstrating that postconviction counsel failed to substantially comply with the duties imposed by Rule 651(c). *Id.* The presumption of compliance may be rebutted by the record. *People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007). Where postconviction counsel fails to comply with the requirements of Rule 651(c), the proper remedy on appeal is to remand for further postconviction proceedings. See *Suarez*, 224 Ill. 2d at 47 (recognizing that our supreme court "has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit."). Our review of postconviction counsel's compliance with Rule 651(c) is *de novo. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 19　　Here, we agree with defendant that the rebuttable presumption that his postconviction counsel provided reasonable assistance during the second-stage proceedings below, created by the filing of a Rule 651(c) certificate, is rebutted by the record.

¶ 20　　Before continuing further, we pause to note that section 122-1(b) of the Act requires that a postconviction petition be "verified by affidavit." 725 ILCS 5/122-1(b) (West 2018). The verification affidavit, "like all pleading verifications, confirms that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67 (2002). In its motion to dismiss, the State asserted that defendant's petition should be dismissed on the basis that no such affidavit was attached. While the circuit court did not explicitly rely upon this argument below in dismissing the petition, on appeal defendant contends that: (1) the State's argument was incorrect, where defendant's petition concluded by stating that "the facts stated in this petition are true and correct in substance and in fact," along with plaintiff's notarized signature, and (2) to the extent

defendant's petition was faulty in this regard, postconviction counsel's failure to remedy this error was an example of unreasonable assistance of counsel. However, the State has conceded on appeal that the notarized statement at the end of defendant's petition was sufficient to satisfy the requirements of section 122-1(b) of the Act. We therefore need not consider this issue further.

¶ 21    In continuing to review the rest of postconviction counsel's performance, we initially find that counsel failed to properly amend defendant's *pro se* petition as necessary for an adequate presentation of defendant's contentions, as required by Rule 651(c) (eff. July 1, 2017). Specifically, postconviction counsel failed to attach an affidavit from Cannon or explain its absence in the supplemental petition, apparently due to his failure to make a sufficient effort to contact Cannon and obtain such an affidavit.

¶ 22    Postconviction petitions must comply with section 122-2 of the Act, which provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). As such, where defendant raises a postconviction claim of ineffectiveness of trial counsel based on the failure to call a witness, the claim must be supported by an affidavit from the proposed witness, or other evidence showing that the witness could have provided testimony favorable to defendant (*People v. Dupree*, 2018 IL 122307) or shall state why the affidavit or other evidence was not attached (725 ILCS 5/122-2 (West 2018)). The Act provides no standard by which we should judge defendant's explanation for why an affidavit is absent. However, our supreme court has stated that the absence of the supporting affidavit must be "adequately" or "sufficiently" explained to preclude dismissal, thereby indicating that the Act requires something more than a cursory explanation for the affidavit's absence. See *People v. Smith*, 40 Ill. 2d 562, 564 (1968); *People v. Curtis*, 48 Ill. 2d 25, 27-28 (1971). The failure to attach the necessary supporting material or

explain its absence is "fatal" to a postconviction petition and by itself justifies the petition's dismissal. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 23    Here, the *pro se* petition filed by defendant did not include either an affidavit from Cannon or *any* explanation for its absence. Postconviction counsel had an obligation to amend the *pro se* petition to rectify this inadequacy pursuant to Rule 651(c). *Suarez*, 224 Ill. 2d at 42. However, while a supplemental petition was filed raising defendant's claims as to Cannon, postconviction counsel similarly failed to include either an affidavit from Cannon or *any* explanation for its absence. This failure was "fatal" to defendant's claims regarding Cannon, and this failure alone amounted to unreasonable assistance of counsel.

¶ 24    Moreover, considering the requirements of the Act our supreme court has recognized that postconviction counsel "has an obligation to attempt to contact those witnesses who might provide information needed to support a potentially meritorious claim raised in the post-conviction petition." *People v. Johnson*, 154 Ill. 2d 227, 248 (1993). "In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." *Id*. at 241. This presumption may be overcome, however, when it is "flatly contradicted by the record." *Id*.

¶ 25    The record here flatly contradicts any presumption that postconviction counsel made a concerted effort to contact Cannon and obtain his affidavit. It is true that the record reflects that postconviction counsel asked for several extensions prior to filing the supplemental motion to allow time to "investigate" a potential witness that "should have been contacted by [trial] counsel but wasn't." However, at the hearing on the State's motion to dismiss, postconviction counsel admitted that he never spoke to Cannon and that his investigation into this matter consisted of an

unspecified "informal conversation" with "office staff" about an investigation that occurred "eight years ago." Postconviction counsel identified no other investigatory steps he undertook to locate Cannon. The record is thus clear that the failure to provide an affidavit from Cannon or to "adequately" or "sufficiently" explain its absence was due to postconviction counsel's failure to fulfill his obligation to make a concerted effort to contact Cannon. This failure too amounted to unreasonable assistance of counsel.

¶ 26    We also find that postconviction counsel improperly undermined defendant's petition in two respects. As this court has previously recognized: "Postconviction counsel is not required to advance frivolous or spurious claims and ' "is only required to investigate and properly present the petitioner's claims." ' [Citations.] '[E]thical obligations prohibit counsel from doing so if the claims are frivolous or spurious.' [Citation.] 'The question remains what should counsel do if counsel investigates the claims but finds them without merit.' [Citation.] Illinois case law provides options: (1) 'stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended' or (2) withdraw as counsel. [Citation.] 'In both of these scenarios, the allegations in the *pro se* petition remain[ ] to proceed according to the parameters of the Act.' " *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26; *People v. Shortridge*, 2012 IL App (4th) 100663, ¶¶ 13-16 (same).

¶ 27    What postconviction counsel is not permitted to do in such circumstances is to continue to represent a defendant and either take "affirmative action that damage[s] defendant's claims" (*Perry*, 2017 IL App (1st) 150587, ¶ 26), "confess the State's motion to dismiss" (*Shortridge*, 2012 IL App (4th) 100663, ¶ 14), or "tacitly" agree with the State's motion to dismiss a postconviction petition at the second stage (*Perry*, 2017 IL App (1st) 150587, ¶ 39). Such actions are not permitted because they: (1) fail to comport with the requirements of Rule 651(c); and (2) fail to provide a

defendant with an opportunity to respond to his counsel's actions prior to dismissal of a postconviction petition. *Id.*

¶ 28    In its motion to dismiss, the State argued that some of defendant's claims were barred by *res judicata* because they had been raised and rejected on direct appeal. At the hearing on the State's motion to dismiss, the circuit court began by asking postconviction counsel: "Tell me what your claims are and why you think your client is entitled to post-conviction relief." Rather than advance defendant's claims at that point, postconviction counsel began by noting that several of defendant's claims "were already brought to the attention of the appellate court on direct appeal and were dealt with there." The circuit court then dismissed defendant's petition in part on this basis, and without defendant having any opportunity to respond to his counsel's actions. Postconviction counsel's statement could potentially be viewed as merely an effort to inform the court of the reason the petition was not amended with respect to these claims. However, we find that in this context and under the specific facts of this case, these comments were improper as they either confessed to or tacitly agreed with this portion of the State's motion to dismiss.

¶ 29    Postconviction counsel also improperly undermined defendant's claims as to Cannon at the hearing. While the *pro se* and supplemental petitions asserted that trial counsel was ineffective for failing to investigate Cannon and call him to testify at trial, postconviction counsel directly undercut that argument in two ways at the hearing.

¶ 30    First, and apparently in reference to either the original police investigation or trial counsel's investigation, counsel commented that "even with the level of investigation the officers did, there was nothing more to be found about Arthur Cannon." Then, counsel opined that trial counsel only learned of Johnson's observance of two additional potential witnesses during her cross-examination at trial, and offered his own opinion that "it is not clear to me that once the defense

counsel heard that, I don't think there was brand new information that could have reinforced anything that the office may have done to look into Arthur Cannon's presence *** it is not clear to me if that could have led to even more investigation." These comments directly undercut defendant's contention that trial counsel should have done more to investigate Cannon and present his testimony at trial. Rather than advocate for defendant's position, postconviction counsel took affirmative action to damage defendant's claim by opining that under the circumstances there was nothing more that trial counsel could have done.

¶ 31    Defendant had no opportunity to respond to any of these comments, and we conclude that they also violated postconviction counsel's obligations under Rule 651(c). Where postconviction counsel is found to have engaged in such activity, the proper remedy on appeal is to "reverse the dismissal of defendant's postconviction petition and remand for new second stage proceedings on his original *pro se* * * * postconviction petition with new counsel appointed to represent defendant. New counsel will have the opportunity to review defendant's petition and the record and either proceed in his or her representation or move to withdraw, allowing defendant an opportunity to respond." *Perry*, 2017 IL App (1st) 150587, ¶ 39.

¶ 32    For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this order.

¶ 33    Reversed and remanded.