NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231070-U

NO. 4-23-1070

IN THE APPELLATE COURT

FILED
October 17, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| TIRINO C. JACKSON, | ) | No. 10CF3414 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding (1) the trial court's denial of defendant's petition for postconviction relief at the third stage of postconviction proceedings was not manifestly erroneous and (2) postconviction counsel did not provide unreasonable assistance.

¶ 2    Following a May 2023 third-stage evidentiary hearing, the trial court denied defendant Tirino C. Jackson's petition for postconviction relief. Defendant, on appeal, argues (1) the court erred when denying his petition and (2) his postconviction counsel provided unreasonable assistance. We affirm.

¶ 3                  I. BACKGROUND

¶ 4    In November 2010, defendant was charged by indictment with 12 counts. Counts I and II alleged the offense of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2010)) for knowingly possessing a firearm, a semiautomatic handgun and a revolver,

respectively, after having been previously convicted of a Class 1 felony for a violation of the Illinois Controlled Substances Act in Winnebago County case No. 97-CF-1797 (drug offense) and unlawful use of weapon by a felon in Winnebago County case No. 03-CF-1540 (weapon offense). Counts III through X alleged unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), relying on the various combinations of defendant's prior drug offense and/or his prior weapon offense and his possession of a semiautomatic handgun and/or a revolver and/or while wearing body armor, a bullet proof vest. Count XI alleged aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(4) (West 2010)); and count XII alleged criminal damage to state supported property (720 ILCS 5/21-4(a) (West 2010)).

¶ 5        In December 2011, the trial court conducted an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference with the parties. Defendant was not present, and the record does not contain a transcript from this conference. However, following the Rule 402 conference, defendant's trial counsel informed the court, "I don't think that we will be able to resolve the case, but we'll keep talking."

¶ 6        The matter proceeded to a jury trial in December 2013. Prior to trial, defendant confirmed to the trial court that he had rejected a plea offer from the State. A jury convicted defendant on all counts.

¶ 7        In February 2014, prior to the sentencing hearing, the State informed the trial court counts XI and XII could be imposed as consecutive terms in prison at the court's discretion. The State followed with

> "The People, and I don't think it's a surprise to [defendant's trial counsel], are
>
> intending to ask for consecutive sentencing for all the counts that defendant will

be convicted of, but we're still looking into those *** and see if we can come to an agreement as to which counts he should be sentenced on."

¶ 8        In March 2014, prior to the sentencing hearing, the parties again appeared before the trial court to discuss potential sentencing ranges for defendant's convictions. Defendant's trial counsel stated to the court, "I agree with [the State] that there is no mandatory consecutive. I understand she will be asking for these charges, all of them to be discretionary consecutive. I have discussed that with [defendant]." The court then asked defendant's trial counsel directly whether the court could impose sentencing on counts XI and XII as concurrent or consecutive. Counsel stated, "I believe that's the case."

¶ 9        At the sentencing hearing in April 2014, the trial court entered convictions on counts I, V, XI, and XII. The court sentenced defendant to 30 years' imprisonment on count I and 20 years on count V, to run concurrently. The court then sentenced defendant to six years' imprisonment on count XI, to run consecutive to counts I and V. Finally, the court sentenced defendant to two years' imprisonment on count XII concurrent with count XI. In total, defendant was sentenced to an aggregate 36 years in prison. Defendant filed a motion to reconsider his sentence, arguing, *inter alia*, the court abused its discretion when imposing the sentence on counts XI and XII consecutive to counts I and V. The court denied defendant's motion.

¶ 10        Defendant filed a direct appeal, arguing the trial court's failure to tender a written limiting instruction for the use of evidence of his prior convictions was prejudicial error. *People v. Jackson*, 2016 IL App (2d) 140774-U, ¶ 26. The appellate court affirmed. *Id.* ¶ 33.

¶ 11        In November 2017, defendant filed a *pro se* postconviction petition, alleging, *inter alia*, his trial counsel misrepresented the possible sentencing range he faced during plea negotiations. The trial court found defendant's petition raised the gist of a constitutional claim

and appointed counsel to represent him. Due to defendant's other pending cases at the time, the amended postconviction petition was not filed until July 2022. The amended petition alleged defendant was offered a plea as to one count of being an armed habitual criminal, with a 20-year prison sentence to be served at 85%. He had been advised his maximum sentencing exposure was 30 years at 85%. The petition alleged trial counsel rendered ineffective assistance by failing to inform defendant he faced potential discretionary consecutive sentencing, which prejudiced defendant when he decided to reject the plea offer. The matter proceeded to an evidentiary hearing in May 2023.

¶ 12       At the hearing, defendant testified trial counsel informed him his maximum sentence would be 30 years in prison, stating, "[Trial counsel] told me that the [armed habitual criminal charge] would eat up the rest of the other counts if I was found guilty." By "eat up," defendant clarified that any remaining convictions would run concurrent to a conviction for being an armed habitual criminal. He said trial counsel had informed him "it wasn't possible for us to win." When rejecting the State's plea offer of a 20-year sentence, defendant explained:

> "I rejected the 20-year offer because I looked at it like—well, me and the lawyer talked, but I looked at it like they offered 20 and the most I get is 30. And if the Judge is any lenience, I can also get less than the 20 that they had on the table. So I'm looking at getting less than 20 or getting a 15 where I can do 10 and I'll be home in time or I'm looking at doing the extra 10 is worth a risk. To me it was kind of worth the risk for the extra 10 years when it's only an extra 10 years that I'm facing versus I can get like a 15 to be home in 12 years."

¶ 13       Defendant stated the first time he learned he could be subjected to consecutive sentencing was in the State's posttrial motion. Defendant stated, when he learned he was subject

- 4 -

to consecutive sentencing, that "killed everything [trial counsel] told [him]." Defendant explained, based on his calculations, he faced a potential sentencing range of 18 to 82 years in prison and had he known this, he would have accepted the 20-year plea offer.

¶ 14    On cross-examination, defendant initially denied that Shauna Riley—who testified at trial to being in the vehicle when defendant fled police and that the guns found in the vehicle were not hers—was his girlfriend. He also denied not expecting Riley to testify against him at trial or believing that he would have been acquitted had she not testified against him. Defendant added that his trial counsel had told him prior to retaining her services that he was going to be found guilty, and it did not make sense for him to even pay her.

¶ 15    Defendant confirmed he understood the difference between consecutive and concurrent sentencing and that he was present in court on February 27, 2014, when the State indicated it was going to seek consecutive sentencing. Defendant also confirmed that on March 28, 2014, his trial counsel told the trial court they had discussed consecutive sentencing with him prior to sentencing. Defendant, who was 33 years old at the time of sentencing, did not recall saying during his statement in allocution that he did not want to be in prison until he was "50 or 80 years old." He confirmed he did not personally object or raise a concern when he was sentenced to a term of more than 30 years in prison. He reiterated he believed his trial counsel when counsel told him the maximum penalty he faced was 30 years. He said when the State sought consecutive sentences, he believed there was nothing he could do about it. He confirmed trial counsel continued to represent him on his other cases for an additional two years after he was sentenced in this case. Defendant stated it was not until he was transferred to prison and "started talking to prison lawyers" that he learned he should have been advised prior to trial that he could potentially receive consecutive sentences if found guilty.

¶ 16     The State's evidence included defendant's affidavit, which was attached to his initial *pro se* postconviction petition, and defendant's trial counsel's affidavit, which stated:

"1. I am an Illinois licensed attorney, and I currently serve as an Associate Judge in the 17th Judicial Circuit.

2. I represented defendant *** in this case during trial and in post-trial hearings including sentencing.

3. I am aware that [defendant] has alleged that I failed to properly advise him of the possible sentencing range for his offenses if he chose to proceed to trial and lose.

4. I am sure I discussed with [defendant] that he faced up to 30 years in the Department of Corrections to be served at 85% per truth-in-sentencing on the armed habitual criminal charge. However, I have no current recollection of whether or not I advised [defendant] that the Court could discretionarily sentence him to consecutive sentences for the other offenses.

5. I believe the State's plea offer in this case was 20 years at 85%, but I believe the offer would have resolved the charges under this case number only, not [defendant's] other pending matters. [Defendant] had three additional pending case numbers involving very serious charges including first degree murder, attempt murder (of one person from one incident and three people from another) and several armed habitual criminal counts.

6. While I do not recall our specific conversations about the plea negotiations, I do not recall [defendant] ever expressing any interest in taking the State's plea offer.

7. I believe [defendant] was confident that a key witness against him would not appear to testify at trial which may have been a consideration in his rejection of the State's plea offer.

8. My recollection is that, after conviction and sentencing, [defendant] did not raise any concerns to me regarding the fact that he was sentenced to a term in the Department of Corrections on the Counts 11 and 12 which was consecutive to Counts 1 and 5.

9. Following the sentencing, I filed a motion to reconsider sentence on [defendant's] behalf. My representation on this case ended on August 6, 2014, with the filing of the notice of appeal.

10. I continued to represent [defendant] in his other criminal matters pending at the time he was sentenced in this case, namely Winnebago County case numbers 2010 CF 999, 2010 CF 3177 and 2010 CF 3415. I represented [defendant] in 2010 CF 999 until March 11, 2016, at which time the case was dismissed. I represented [defendant] in 2010 CF 3415 until September 22, 2016, at which time I withdrew as counsel for reasons related to [defendant's] inability to pay legal fees."

¶ 17　　　　The trial court noted it had reviewed defendant's amended petition, the trial testimony, trial counsel's affidavit, defendant's affidavit attached to his *pro se* petition, the witness list, defendant's testimony from the evidentiary hearing, the appellate court's decision in *Jackson*, and the Illinois Supreme Court's decision in *People v. Hale*, 2013 IL 113140. The court found the "only evidence" supporting defendant's claim he was not properly advised of the potential for consecutive sentencing was his own "self-serving" testimony at the hearing. Defendant never raised any issues regarding his consecutive sentence after his sentencing

hearing or for the next two years afterwards, when his trial counsel continued to represent him on his other pending matters. The court pointed to trial counsel's affidavit, stating defendant had never expressed an interest in accepting a plea offer and was confident Riley would not testify against him at trial. The court concluded defendant had not met his burden and denied the petition.

¶ 18　　　　　　This appeal followed.

¶ 19　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　　　On appeal, defendant contends (1) the trial court's findings following the evidentiary hearing were manifestly erroneous and (2) he was denied the reasonable assistance of postconviction counsel when counsel failed to raise the issue of an extended-term sentence imposed on a lesser-class conviction. We address each claim in turn.

¶ 21　　　　　　　　　　　A. Manifestly Erroneous Claim

¶ 22　　　　　　The Post-Conviction Hearing Act provides a three-stage process to remedy a defendant's conviction that resulted from a substantial violation of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2022); *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). At the third stage, a defendant has the burden of proving a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). "Following an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous." *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). A trial court's "ruling is manifestly erroneous if it contains error that is clearly evident, plain, and indisputable." *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002).

¶ 23　　　　　　To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test from *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, "a

defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance created a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Graham*, 206 Ill. 2d 465, 476 (2003). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Hale*, 2013 IL 113140, ¶ 18 (quoting *Strickland*, 466 U.S. at 694). The right to effective assistance of counsel applies to the plea-bargaining process as well. *Id.* ¶ 15.

¶ 24       Defendant specifically contends his trial counsel rendered ineffective assistance that was both deficient and prejudicial. He argues trial counsel's performance was objectively unreasonable because she failed to inform him that his maximum aggregate sentence was 76 years in prison, not 30 years in prison. He notes our supreme court, in *Hale*, stated, " '[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' " (Emphasis in original.) (quoting *Hale*, 2013 IL 113140, ¶ 16, quoting *People v. Curry*, 178 Ill. 2d 509, 528 (1997)). Defendant also argues he was prejudiced by trial counsel's error because he would have accepted the State's 20-year plea offer had he been aware he faced a sentence in excess of 30 years in prison.

¶ 25       Defendant concedes that to show prejudice, he must provide more than his own "subjective, self-serving" testimony. (Internal quotation marks omitted.) *Hale*, 2013 IL 113140, ¶ 18. "Rather, there must be 'independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice,' and not on other considerations." *Id.* (quoting *Curry*, 178 Ill. 2d at 532).

¶ 26       However, defendant contends the record corroborates his testimony. Specifically, he notes (1) the record is silent on the issue of consecutive sentencing until after he was found

guilty at trial, (2) trial counsel's affidavit does not directly contradict his claim he was never advised of the potential for consecutive sentencing, and (3) the trial court explicitly stated defendant's testimony at the evidentiary hearing was "truthful" and "candid."

¶ 27    We are not persuaded by defendant's arguments on appeal. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (noting the appellant bears the burden of persuasion as to his or her claims of error). While defendant is correct the record is silent on the issue of consecutive sentencing until after he was convicted by a jury and trial counsel's affidavit does not explicitly state she informed defendant of the potential for consecutive sentencing prior to trial, the record does not corroborate his testimony.

¶ 28    Defendant testified at the evidentiary hearing he learned he was subject to potential discretionary consecutive sentencing after the trial but prior to sentencing. This is corroborated by the record wherein at both appearances in February and March 2014, prior to the sentencing hearing, the issue of consecutive sentencing was raised. Trial counsel is on record in February 2014 stating she spoke with defendant about the consecutive sentencing issue. Defendant testified at the evidentiary hearing he understood the difference between consecutive and concurrent sentences prior to his sentencing hearing. He testified that, prior to sentencing, when he learned he would be subject to potential consecutive sentences, it "killed everything [trial counsel] told [him]." He said he contemplated facing as much as 82 years in prison. Yet, at no point did he raise this concern with either his trial counsel or the sentencing court.

¶ 29    Furthermore, despite defendant's testimony, the record shows other plausible considerations for why defendant chose to go to trial. Trial counsel's affidavit explicitly noted defendant showed no interest in accepting a plea offer, the plea offer did not resolve any of his

other pending matters where he faced substantially more severe sentences, and defendant's purported belief that Riley would not testify against him.

¶ 30　　　　The fact is, defendant's self-serving testimony alone does not overcome the evidence of other considerations for rejecting the State's plea offer and fails to establish prejudice, even if counsel had erroneously failed to inform him of potential discretionary consecutive sentencing. Therefore, we conclude the trial court's judgment was not manifestly erroneous.

¶ 31　　　　　　　　B. Unreasonable Assistance of Postconviction Counsel Claim

¶ 32　　　　Defendant next contends his postconviction counsel rendered unreasonable assistance by failing to raise a meritorious argument in the amended postconviction petition. He claims counsel should have raised the issue that he received an illegal extended-term sentence for aggravated fleeing and eluding.

¶ 33　　　　In postconviction proceedings, there is no constitutional right to counsel; rather, the right is supplied by statute. *People v. Addison*, 2023 IL 127119, ¶ 19. A defendant is entitled to a reasonable level of assistance, which is less than what is afforded by the federal and state constitutions. *Id.* At a minimum, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) requires postconviction counsel to (1) consult with defendant to ascertain his contentions, (2) examine the record of the trial proceedings, and (3) make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions."

¶ 34　　　　The Unified Code of Corrections permits an extended sentence "within the class of the most serious offense of which the offender was convicted." 730 ILCS 5/5-8-2(a) (West 2014). Where "multiple convictions stem from related courses of conduct, a defendant may only

be sentenced to an extended-term sentence for the most serious classification of offense." *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 57.

¶ 35 Here, defendant was sentenced to six years' imprisonment on count XI for aggravated fleeing or attempting to elude a peace officer. Aggravated fleeing or attempting to elude a peace officer was a Class 4 felony as charged against defendant. 625 ILCS 5/11-204.1(b) (West 2010). A Class 4 offense ordinarily carries a sentencing range of not less than one year and not more than three years in prison. 730 ILCS 5/5-4.5-45(a) (West 2010). A Class 4 offense is subject to an extended-term-eligible sentence of three to six years in prison. *Id.* However, in this case, defendant was also convicted and sentenced to a more serious class offense: being an armed habitual criminal, which is a Class X offense. 720 ILCS 5/24-1.7(b) (West 2010). The record shows all of defendant's charges and subsequent convictions stemmed from a related course of conduct, as defendant was apprehended after fleeing from police officers in a car chase and two firearms belonging to defendant were recovered from the vehicle. Therefore, it is abundantly clear from the record that defendant received an improper sentence when the trial court imposed an extended-term sentence for the lesser Class 4 felony of aggravated fleeing or attempting to elude a peace officer.

¶ 36 We note, however, "[p]ostconviction counsel may conduct a more thorough examination of the record and raise additional claims, but he or she is under no obligation to do so." *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26. "Under Rule 651(c), postconviction counsel is required to examine as much of the record as is necessary to adequately present and support those constitutional claims raised by the [defendant]." (Internal quotation marks omitted.) *Id.* Defendant's initial *pro se* petition did not raise an issue regarding his extended-term sentence for aggravated fleeing or attempting to elude a peace officer. Our supreme court has

already stated postconviction counsel does not render unreasonable assistance by failing to raise an issue not raised in the *pro se* petition. *Pendleton*, 223 Ill. 2d at 475. " '[P]ostconviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Id.* (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). Accordingly, defendant has failed to show his postconviction counsel rendered unreasonable assistance.

¶ 37                              III. CONCLUSION

¶ 38          For the reasons stated, we affirm the judgment of the trial court.

¶ 39          Affirmed.